[No. 1669.]

## JOS. SCHLITZ BREWING COMPANY, APPELLANT, *v.* ROBERT GRIMMON, RESPONDENT.

1. SALES—TERMS OF—ASSIGNEE OF PURCHASER—EVIDENCE. Where defendant claimed certain beer kegs through an assignment of a debtor's interest to his creditors, it was permissible for plaintiff brewing company to show in replevin for the kegs that on the bills rendered to the insolvent for beer shipped him in the kegs there was a printed condition that the kegs remained the property of plaintiff, as any right which defendant acquired from the insolvent or his assignee was limited by the terms on which the insolvent purchased from plaintiff, and these could be shown regardless of defendant's knowledge thereof.

2. SAME—EVIDENCE—CUSTOM. Plaintiff brewing company, when sending the bill of · lading for a carload of beer, wrote the purchaser to always return empty kegs, and the purchaser agreed to follow plaintiff's instructions. *Held,* that in replevin for the kegs by plaintiff against defendant, who bought them at a sale of the purchaser's property for the benefit of creditors, evidence to show a custom to so return them was inadmissible, the letters being too explicit to need explanation.

3. SAME—PRINCIPAL AND AGENT—AUTHORITY OF AGENT—PROOF. Where it is sought to prove authority in an agent, the authority, if in writing, should be produced, or its loss shown, in which case only its terms may be shown; and, if verbal, the language should be stated to the best of witness' recollection.

4. SAME—TESTIMONY OF AGENT. Although the word "authority" is too much in the nature of a conclusion to use in a question to a witness as to whether an alleged agent has been authorized, empowered, or instructed, to do certain things, he may at least testify that there was no instruction, or nothing said or written, in regard to the matter, by the alleged principal to the alleged agent.

5. SAME—REBUTTAL. Where defendant relies on the acts of an alleged agent of plaintiff, evidence that such agent had no authority in the matter has no proper place in the case except in rebuttal, and not until after defendant introduces some proof of agency.

6. SAME—PROOF OF AGENCY—BUSINESS CARDS—DECLARATIONS OF AGENT. Plaintiff brewing company sold beer in kegs, retaining the ownership of the kegs, to one who thereafter became insolvent, and whose assignee for the benefit of creditors sold the beer and kegs to defendant. In replevin by plaintiff for the same, the assignee testified that he sold the kegs because one S., representing himself as plaintiff's agent, said that plaintiff had no claim on the kegs, and no agreement with the insolvent by which they could ve recovered. *Held,* that such assertions by S., his representations and assumption of authority, the production of cards bearing his name in connection with that of plaintiff company and its trade-mark and motto, and his making out a bill to the assignee for a part of the kegs, unless authorized or ratified by plaintiff, did not bind it.

7. SAME. Sending S. out to solicit orders for beer, subject to the approval of plaintiff's officers, and thereafter directing him to employ an attorney to replevin the kegs, did not give him power to sell them, nor make plaintiff liable further than it had endowed him with authority.

8. SAME. The fact that the cards carried by S. bore after his name the words "With Jos. Schlitz Brewing Co." did not show that he was authorized by plaintiff to sell the kegs.

9. SAME—TESTIMONY OF AGENT. The rule that an agency cannot be established by an agent does not prevail when he is under oath and subject to cross-examination.

10. SAME—ESTOPPEL. The acceptance by plaintiff of a dividend on its claim against the insolvent, without knowledge that any part of the money came from its kegs, or that S. had consented to a sale, or attempted to waive plaintiff's rights thereto, did not estop it from claiming the property.

11. SAME—BURDEN OF PROOF. The burden of proving estoppel is on the party alleging it.

12. SAME—SUFFICIENCY OF EVIDENCE. In replevin for certain beer kegs, evidence examined, and *held* insufficient to support a judgment for defendant.

APPEAL from the District Court, Washoe County; *B. F. Curler*, Judge.

Action by the Jos. Schlitz Brewing Company against R. Grimmon. Judgment for defendant, and plaintiff appeals. **Remanded for new trial.**

The facts sufficiently appear in the opinion.

*O. H. Mack*, for Appellant:

I. The theory of the defense in the trial of this cause is that there was either an express or implied agency upon the part of one A. G. Shape by whose representations and actions the appellant was charged. There is nothing to justify such a theory; the pleadings nowhere admit it, and there is not one scintilla of evidence to sustain it. The court excluded all of appellant's testimony that tended to disprove such a theory. As a matter of fact it would have been entitled to a judgment *non obstante veredicto*, if the motion had been made in time.

II. The testimony of Otto Benschuetz, C. H. Chon, and the respondent himself, as tending to prove said custom, should have been admitted. (Reinhart on Agency, sec. 194; Mechem on Agency, sec. 281; 79 Am. Dec. 196; 57 Am. Dec. 602.) Where in the trial of a case it is sought to bind the principal by acts of a person alleged to be his agent, the principal has a right to prove by himself and alleged agent the authority conferred upon said alleged agent as tending to

show that the principal was not responsible for his acts and the alleged agent is responsible for his acts, and the alleged agent is a competent witness as to the scope of his authority, and can testify in so many words whether he had or had not authority to do a certain thing, using the conclusion "authority." (*Yellow Jacket M. Co.* v. *Stevenson*, 5 Nev. 224; *Edwards* v. *Carson Water Co.*, 21 Nev. 477; *Dowell* v. *Williams*, 33 Kan. 601.)

III.   The court in the trial of this case ruled out all questions as to whether Shape had authority to bind this appellant or not.   The court erred in so doing.   If an agent has no authority to perform a certain act, it is immaterial and irrelevant for him to testify as to any other authority he may have.   If there were no words passed between him and the principal giving him authority to perform the act, he can testify in so many words he had no authority.   (*Edwards* v. *Carson Water Co.*, 21 Nev. 477; *Graves* v. *Horton*, 35 N.W. 568.)

IV.   The law of this state concerning persons dealing with corporations is as follows: "Persons dealing with corporations are chargeable with notice of the agent's powers," and respondent was bound to know that Shape could not act beyond the powers invested in him by said corporation. (*Edwards* v. *Carson Water Co.*, 21 Nev. 483; Mechem on Agency, 276; Parsons on Contracts, vol 1, secs. 40–42; *Smith* v. *Association*, 12 Daly, 305; *Mining Company* v. *Frazer*, 29 Pac. 669; *Owings* v. *Hull*, 9 Pet. 628.)   It was incumbent upon the part of appellant to bring its rules and regulations to the knowledge of respondent.   The law implies such knowledge upon the respondent's part and he is not allowed to dispute it.

V.   The burden of proof is upon respondent relying on ratification; it is incumbent upon him to prove that appellant knew of the contract, and not upon appellant to establish the negative.   It has been nowhere shown that appellant was so cognizant.   It does not appear that appellant received over 10 per cent of the value of its goods.   It received it from the assignee; there was no business relations shown between appellant and respondent; respondent never paid appellant any money; appellant never accepted any benefit from debt;

it was justified in retaining all of the purchase price of said goods, and it received it without any knowledge whatever of the circumstances of the case. Hence, there was no ratification and there could be no estoppel without a thorough knowledge of all the facts upon appellant's part at the time they occurred. It could not be estopped unless respondent showed that appellant knew at the time of the acts that Shape was undertaking to act on its behalf and intended he would so act. Estoppel should be pleaded. (13 Nev. 109; 13 Nev. 395; 6 Nev. 377.)

VI. The court erred in not admitting evidence to prove tender of check. Appellant does not have to plead tender in complaint; it belongs to the reply. No reply is allowed in this state, hence it is assumed. A personal check is a legal tender for any sum if the amount only is objected to and objection to the nature of the tender is waived. (Parsons, Notes and Bills, 620–623.) Therefore the court erred in not admitting evidence to show tender of check. (7 Ohio St. 257; 19 Nev. 379.)

VII. The court will observe that this, to say the least, was probably the most peculiar pleading that has ever been brought to the attention of the court. Here we have a complaint properly framed, declaring in replevin, with a sufficient bond to secure the respondent from possible loss, the goods legally in the possession of the sheriff; now comes the respondent and answers, ignoring said bond, and sets up conversion of said goods by appellant predicated upon said sheriff's seizure, and frames his answer in tort and asks a judgment for the value of the goods and not for the return thereof, evidently trying to use this court as a market place for the disposal of goods, wares, and merchandise and a speedy payment thereof. The court will observe the inconsistency of the answer in this, that an action in replevin is an action to determine the rights of property—an action *in rem.*

VIII. The court erred in not allowing alternative judgment. An action in trover or in conversion is a suit *in personam.* The court will notice that we have an action *in rem* endeavored to be answered by an action *in personam,* which

is absolutely impossible and against the rules of all good pleading. The only question that this court can possibly determine is the ownership of said property; placing it where it belongs, together with damages for its unlawful detention, with an alternative judgment for its value if not returned. An absolute judgment for its value, not allowing the appellant to satisfy the judgment by return of the property with costs and damages, is erroneous. (*Lambert* v. *McFarland*, 2 Nev. 58; 12 Nev. 423; *Fitzhugh* v. *Wiman*, 9 N. Y. 559; Comp. Laws, 3297.) Therefore the court erred in not rendering said alternative judgment, and appellant is entitled to a new trial.

*S. Summerfield*, for Respondent:

I. In this action appellant, a Wisconsin corporation, brought an action in claim and delivery in the district court against respondent for the recovery of certain cooperage of the alleged value of $497.50. Coincident with the institution of the suit it executed and delivered its replevin bond, caused the sheriff to seize the cooperage in respondent's possession and to deliver the same to appellant, which speedily caused the property to be shipped to it at Milwaukee, Wisconsin, at which place appellant has ever since retained possession of the same.

II. Later . respondent answered appellant's complaint denying any unlawful possession or detention of the cooperage formerly in his possession, pleaded ownership of all that was in his possession, alleged conversion and removal of the same beyond the jurisdiction of the court by appellant, waived return of the property, and demanded judgment against appellant for its value in the sum of $423. On the trial of the action appellant, by leave of court, amended its complaint respecting the amount of cooperage in controversy and the value thereof so as to correspond with the affirmative allegations contained in respondent's cross-complaint. The trial resulted in a verdict and a judgment therein against appellant and in favor of respondent for the sum of $423 and for costs of suit. Appellant moved for a new trial, and from an order denying the same it appeals to this court.

III.   None of the exceptions taken by appellant to the rulings of the trial court are effective for the reason that the point or points of such exceptions were not stated as is required by law.   (*McGurn* v. *McInnis*, 24 Nev. 370.)

IV.   An agent's authority and the scope thereof is purely ultimate determination of law and fact deducible from the evidentiary facts only in each particular case subject to the established principles of law.

V.   The private course of business between Ecker and appellant could not under any principle of law affect respondent in the absence of knowledge by him of the nature thereof.

VI.   Mr. Shape's evidence was not admitted to prove his agency before the same was proved *aliunde*, but was admitted to show the actual transaction whereby respondent claimed to have become invested with the title to the disputed cooperage.   The agency of Mr. Shape was established by various testimony and evidentiary circumstances to the satisfaction of the jury in subordination to careful and correct instructions definitive of the law of agency from the court.

VII.   Appellant ratified the sale of the cooperage to respondent by accepting a portion of the purchase price therefor paid by respondent.   It is an invariable rule that if one accepts the benefits of an unauthorized sale made in his behalf by another he is bound by its terms the same as if he had entered into the contract with the contracting person or had expressly ratified it.   (*Hyatt* v. *Clark*, 118 N. Y. 563; *Murray* v. *Mayo*, 157 Mass. 348; *Pattison* v. *Babcock*, 130 Ind. 474; *Wilder* v. *Beede*, 119 Cal. 646; *Marks* v. *Taylor*, 63 Pac. 897; *Owens* v. *Swanton*, 64 Pac. 921; *Bissell* v. *Dowling*, 117 Mich. 646.)

VIII.   No tender of the money received by appellant from Grimmon for the cooperage was ever made to respondent. The most that is claimed is that appellant's attorney tendered to respondent's attorney his personal check, which was refused.   This does not constitute a tender in law.   (*Englander* v. *Rodgers*, 41 Cal. 420; *Beauchamp* v. *Archer*, 58 Cal. 431.)

IX.   Agency need not necessarily be proven to exist by express contract, but may be established by proof of acts

and conduct calculated to induce a reasonable man to believe in the existence of such agency. (Bigelow on Estoppel, chap. 17; *Reynolds* v. *Collins*, 78 Ala. 94; *Hubbard* v. *Tenbrook*, 124 Pa. St. 291; *Hoppe* v. *Saylor*, 53 Mo. App. 4; *Collins* v. *Cooper*, 65 Tex. 460; *Land Association* v. *Banks*, 80 Minn. 317.)

X. Under the pleadings in this action the court did not err in rendering judgment for the value of the property instead of the alternative form. In the first instance the appellant had the right to sue in either replevin or in trover at its option. It chose to sue in replevin, and had it prevailed in such suit the judgment would have had to be in the alternative, as has heretofore been decided by this court in *Lambert* v. *McFarland*, 2 Nev. 58. The cooperage having been seized by appellant and removed to Wisconsin, respondent had the right to waive a return of the property to him and to demand judgment for its value.

XI. It is only when in such cases as this "the defendant claims a return thereof" that the judgment must be in the alternative when he prevails in the suit. (Comp. Laws, 3297.) Under a statute similar to that of Nevada the Supreme Court of Wisconsin has directly and emphatically held that a defendant in replevin may waive a return of the property to him and take judgment for its value. (*Farmers Loan & Trust Co.* v. *Bank of Racine*, 15 Wis. 424, 82 Am. Dec. 689; *Klœty* v. *Delles*, 45 Wis. 490.)

XII. It is only where the defendant claims a return that he cannot have judgment for the value only. (*Smith* v. *Coolbaugh*, 19 Wis. 111; *Three States Co.* v. *Blanks*, 133 Fed. 479.) In *Farmers Loan & Trust Co.* v. *Commercial Bank of Racine*, *supra*, the Supreme Court of Wisconsin forcibly and with unanswerable logic fortified its decision in the following language: "The statute makes the alternative judgment in favor of a defendant dependent on the condition that he 'claims a return'; and we can give no effect to this clause except by allowing an option to claim a return or not. Counsel construe it as a description merely of that class of defenses which, if established, would entitle the defendant to a return, as distinguished from those which would not. But it does not seem to us such as would have been used for that pur-

pose. If that had been the design, the legislature would have said that where the defendant succeeded on an answer which would entitle him to a return, the judgment should be in the alternative. The language used seems much more aptly to describe the option which defendants had in such cases, by the law in force at the time the code was adopted, to waive a return and take judgment for the value, than it does the difference between pleas which entitle him to a return and those which do not. And we think there is reason and justice in preserving this option to defendants. The plaintiff has in effect the same option; for although he may not elect, after having brought his suit to obtain the property, to take a judgment for the value where a return can be had, he might have waived a return before bringing suit, and have sued for the value either in trespass or trover. And where the plaintiff has unjustly taken the defendant's property into his own possession, even though by the aid of a legal process, there is no reason why the defendant, if he chooses, should not have the right to compel him to abide by the consequences of his own acts and to pay for the property. Indeed, it might, in many instances, be oppressive to defendants to compel them to receive it back. Thus, suppose a contractor has procured certain articles with which to complete his contract, and some plaintiff replevies them and gives the bond necessary to take possession. The litigation may last for years, but the contractor is bound to complete his contract immediately. He provides new articles for that purpose, and afterwards succeeds in the suit. Should he be bound then to take back the articles when he had no longer any use for them? It seems to me not. And the fact that plaintiffs might sometimes be compelled to pay for property, and lose it afterwards, is no reason why the defendant should not be entitled to a judgment for the value. If the defendant in replevin had been sued in trespass, he might have been made to pay for the property, and yet some stranger might afterwards have taken it from him on proving a better title than the plaintiff in the trespass suit. This is a risk that all parties have to run. But it affords no reason why the judgment should not be according to the rights of the parties as they are made to

appear in the suit.  Possession was sufficient evidence of title in the defendant until the plaintiff showed a better title. And if that possession would be sufficient to justify a judgment for the return of the property, it is equally sufficient to justify one for its value, and the defendant's option to take such a one ought to be defeated for the purpose of allowing plaintiffs to resort to legal process to get possession of their neighbors' property with the least possible risk to themselves."

*Per Curiam:*

The complaint in this action is an ordinary one in replevin for 158 half and 38 quarter beer barrels, alleged and admitted to be of the value of $423.  The answer declares that one A. G. Shape was the authorized agent of plaintiff for the transaction of its business in the State of Nevada during the times mentioned in the complaint; that on or about June 16, 1903, Geo. L. Ecker was a wholesale liquor dealer at Reno, and was at that time insolvent, and owing plaintiff $869.75 for goods, wares, and merchandise previously sold and delivered by plaintiff to Ecker, which included the personal property in dispute; that on this 16th day of June various creditors of Ecker agreed with him that one T. M. Branton, as trustee for all the creditors, should take possession of his property, and expeditiously dispose of the same, and distribute the proceeds of the sale thereof pro rata among the creditors; that on July 2, 1903, there were in storage with the Flanigan Warehouse Company at Reno, Nevada, 150 half and 38 quarter-barrels of Schlitz beer consigned by plaintiff to Ecker, and that thereupon plaintiff, acting by and through A. G. Shape as its agent, importuned and requested defendant to purchase this beer and the half-barrels and quarter-barrels containing the same, and represented to and assured defendant that the same were not the property of the plaintiff; and that plaintiff had no claim thereupon, but, on the contrary, that they belonged to Ecker, and were a part of his assets, to be sold for the benefit of his creditors; and that defendant, in express reliance upon these representations, purchased and received these barrels and their contents, and paid therefor $566.75; and that on or about September 7,

1903, this money was distributed among the different creditors; and that the plaintiff, through its attorneys, Curler & King, received and accepted their proportionate part thereof.

These allegations of the answer being deemed denied, under our statute and practice it was incumbent upon the defendant to prove them, or such parts thereof as were necessary to be established before he could prevail. That the cooperage was not included in the sales of beer by plaintiff to Ecker is clearly indicated by their agreement, which was closed by letter. When sending bill of lading for the first carload of beer, the plaintiff, under date of June 25, 1902, after specifying extent of credit and other conditions, wrote: "Please always return empties to us in a refrigerator car, and do not send us a smaller quantity than 15,000 lbs." In his letter in reply on June 29th, after saying he was glad they had agreed upon prices, and mentioning other matters, Ecker stated: "I shall follow your instructions as to returning empties." Pursuant to these terms Ecker returned the other cooperage from the nine cars of beer he received. The plaintiff offered to prove that there were printed on the back of all bills sent by the plaintiff to its customers the following: "Rules and Regulations. The attention of all parties dealing with Jos. Schlitz Brewing Company is called to the following by-laws, rules and regulations. Authority of agents.—No one can bind this company or contract any debt on its behalf unless a general officer of the company, or specially authorized by resolution of the board of directors. Sale and delivery.—No order or agreement for the purchase of beer will be considered as binding upon this company until received and accepted at the general office in Milwaukee. * * * Return of empty packages.—The kegs and barrels in which the beer is sold invariably remain the property of the brewing company. The use thereof for any purpose other than holding beer constitutes conversion or larceny of the same. * * * By order of the Board of Directors, August Uihlein, Secretary." Objection was made and sustained to the proffered evidence on the ground that these rules would not be admissible against the defendant

when the bills bearing them were not sent to him, and he was not shown to have received knowledge regarding them. By his answer, as stated, and by a letter to which we refer hereafter, defendant was claiming through an assignment of Ecker's interest to his creditors; and regarding the extent or limitation of that interest it was permissible for plaintiff to show that on the back of the bills rendered to Ecker there was a printed condition that the kegs remained the property of the brewing company. Any right which defendant acquired from Ecker or his assignee was limited by the terms on which Ecker had purchased from the plaintiff, and these could be shown regardless of defendant's knowledge. Ordinarily, the purchaser of property must ascertain the facts relating to its title or right, or he buys at his peril. This evidence would have been cumulative to that we have quoted from the letters showing that the cooperage was to be returned to the brewing company when the beer was sold to Ecker. As the latter had no interest in the barrels or kegs except to use them until the beer was sold and consumed, he could not convey to his assignee any greater right than he possessed himself. By letter defendant offered to sell the casks to plaintiff, and the latter replied from Milwaukee by claiming and demanding them. In answering defendant wrote: "In reply will say that I have the kegs I bought from the creditors and the only way you can get them will be through the courts of Nevada. * * * I will hold or sell as I choose all the barrels I bought from said creditors. I don't claim any others. Jos. Schlitz and Company was not known in the transaction I had, so you will have to take them some other way than trying to bulldoze me." From this it would seem that defendant believed that plaintiff had sold the kegs to Ecker, which, as we have indicated, was not the fact; or that the creditors could sell plaintiff's property to apply in payment of Ecker's debts, which is not the law. Testimony to prove that in one instance in far away San Diego, California, so long ago as the year 1888, the empty kegs were returned to the brewery, and other evidence offered for the purpose of showing that this is the custom, was properly excluded. By the letters between plain-

tiff and Ecker ownership of the cooperage was reserved in terms too explicit to need explanation. As notice to the world of plaintiff's ownership, these casks bore its name burnt on the ends and sides. Defendant testified that during the seven years he was in the hotel business at Carson City, the brewing company with which he was dealing took back the empty kegs. It is apparent that he was aware that the cooperage might not have been included in the sale of the beer to Ecker, but, if not so, he could not safely purchase it without first obtaining correct information.

Notwithstanding defendant wrote that plaintiff was not known in the transaction, it is claimed that the plaintiff, through one A. G. Shape as its agent, sold or waived its right to the casks in favor of defendant and the assignee, and that by receiving a percentage of the money which the defendant paid for the beer and kegs plaintiff is estopped from recovering the cooperage. Witnesses for the defendant testified that after he had placed with Branton, as assignee of Ecker for the creditors, a bid of $550 for the Schlitz beer on hand, the defendant asked Branton if the cooperage went with the beer, and declined to take it without; that the latter by phone called Shape, who was in Reno at the time, and who came to the office to see them, and who represented himself as the Pacific Coast agent for the plaintiff, and said that ordinarily the kegs were supposed to be returned to the brewery, but in this case the company had no claim on them, and no agreement with Ecker by which it could recover them from his assignee; that Shape inquired for a lawyer, and defendant introduced him to Attorney King in Reno; that Shape made out a bill in the name of the defendant against Ecker or his assignee for $869.75, and included therein an item of 45 half-barrels at $2.25 each, amounting to $101.25. Shape testifies that in making this charge he exceeded his authority, and that he did not negotiate for the sale of the casks to defendant. There was evidence that Shape left Curler & King's office saying he would wire to the plaintiff in regard to the cooperage, and defendant said on the stand that he supposed Shape had gone to telegraph concerning it; and King testified that Shape told him next morning that it was all right.

Shape presented cards bearing near the top the trade-mark of the Schlitz Brewing Company and the motto, "The Beer that Made Milwaukee Famous;" at the center,"A. G. Shape"; and near the bottom, "With Jos. Schlitz Brewing Co., Milwaukee, Wis." These and the testimony were admitted over objections. While the evidence was being placed in plaintiff's case in chief, it was sought to prove by the depositions of the officers of the company that Shape had no authority to sell or waive its right to the cooperage. The witnesses were asked whether he had been authorized, empowered, or instructed to dispose of any cooperage. Objection was made, and sustained on the grounds that whether he was authorized was a conclusion, and that the witnesses could testify only to the terms of the appointment. This is a correct doctrine in cases where it is sought to prove power or authority in an agent. If in writing, the instrument should be produced, or its loss shown; and, if verbal, the language should be stated to the best of witness' recollection. But when, as here, it is sought to prove a negative, and that no authority was given, such objection cannot prevail or apply, for it is beyond reason and impossible for a witness to state the terms of an appointment when none exist; and, although the word "authority" is too much in the nature of conclusion to use in a question to a witness, it is at least proper for him to testify that there was no instruction or nothing said or written in regard to the matter by the party claimed to be the principal to the party claimed to be the agent. The depositions were taken under stipulations that waived objections to the form of the interrogatories.

On the trial objections were made to the answers which were responsive to the questions. But this testimony ought not to have been admitted on the plaintiff's case in chief for another reason, and its exclusion worked no injury. If the questions had been entirely unobjectionable in form, the evidence had no proper place in the case, except in rebuttal, and not until after the defendant had introduced some proof of agency. Under elementary rules, it was incumbent on him to prove the allegations of his answer before the plaintiff was required to rebut them, and it was quite unnecessary

for plaintiff to prove that Shape was not empowered to make disposition of the cooperage until after defendant had introduced some evidence tending to show that he was.   Branton testified that, as assignee, he sold the barrels to defendant because Shape had represented himself as the agent of the company, and he supposed he was authorized, and had said that the plaintiff had no claim upon them, and no agreement with Ecker by which they could be recovered.   Such assertions by Shape, his representations, and assumption of authority, the production of cards bearing his name in connection with that of the company, and its trade-mark and motto, his statement that he would telegraph to the plaintiff, and later to King that it was all right, and his making out a bill to the assignee for a part of the cooperage, may have lured and deceived the defendant; but, unless these acts were in some way authorized or ratified by the plaintiff, they would not bind it or deprive it of its property. Between the various objections sustained, enough evidence was admitted to show that Shape, who was a young man, had been sent out the year before by the traveling department of the plaintiff to solicit orders for beer.   Attached to the deposition of Wm. C. Mueller, correspondent for the Schlitz Brewing Company, is a copy of a letter from plaintiff to Shape in which it was stated that, in answer to his telegram, they had wired him to employ a good commercial attorney and have him replevin their cooperage, and stating, "The attorney perhaps does not know that the cooperage is never sold and always remains our property and for this reason anyone who attaches same has no right."   This letter is dated June 30th, and, in answer, defendant alleges that it was on or about July 2d, and he testifies that he thought it was July 1st or 2d, that Shape importuned and requested defendant to buy the beer and barrels.   There is no evidence in the record having the least tendency to show that the plaintiff ever authorized or ratified any sale or waiver of its right to the cooperage, but, on the contrary, its every act in this connection, its agreement by letter with Ecker, the regulations printed on the backs of its bills, and prompt wiring to have an attorney replevin the barrels, indicate that they

remained the property of the plaintiff, and that it never intended to relinquish any right to them.

It would seem that the district court, in effect, assumed that, by sending Shape forth to solicit orders for beer, it became bound by anything else he might do in connection with its affairs. As it is not shown that Shape had any general authority to act for the company, or that he was empowered to waive its right to the cooperage, or that his acts were ratified, his declarations were merely hearsay, and, however much the defendant may have been lured into relying upon them, they did not affect the rights of the plaintiff. Shape had been sent by the plaintiff, not as its general agent, with power to dispose of the cooperage it had reserved by its rules and by express conditions with Ecker, but to solicit orders for beer subject to the approval of its officers in Milwaukee, and, in addition, he was specially directed by a telegram to employ a good commercial attorney, and have him replevin the barrels; and the plaintiff did nothing which could be construed as holding Shape out as an agent with power to waive any right to its cooperage. Sending him forth for these limited purposes did not give him additional power, nor make the company liable further than it had endowed him with authority. If, by making him a traveling solicitor, the plaintiff became bound by his acts in attempting to waive the right to its cooperage, on the same principle he could bind the plaintiff by a sale of its brewery on credit, or a ticket agent or conductor could sell the property of a railroad company, or a drayman or common carrier could effectually sell merchandise when only authorized to haul it. If the defendant had wired to the plaintiff before closing the deal, or required Shape to show a telegram, or some written authorization, instead of trusting in Shape, any trouble might have been avoided. The cards to which we have referred, and evidence regarding them which was admitted over objection, did not tend to prove any requisite authority in Shape. The trade-mark of the Jos. Schlitz Brewing Company, with its girdle encircling the globe, did not have the potency of an official seal. There was no proof that the plaintiff had printed or issued them, or authorized

Shape to use them. But if it had, the words they bore—
"A. G. Shape, with Jos. Schlitz Brewing Co."—did not define
his powers, or indicate whether he was the president or the
porter of the company, or merely its traveling solicitor, and
would not warrant the defendant or the court in concluding
that Shape had been authorized by the plaintiff to dispose
of its cooperage or its breweries.

If, by the assumption or pretense of authority, anyone
could effectually sell the property of another without being
empowered by him, no man's holdings would be safe. Bran-
ton testified that he got his power to sell the kegs as assignee
from Shape, who was supposed to be the agent of plaintiff.
At different times, when ruling on objections to testimony,
the court recognized and stated the correct principle—that
an agent's authority could not be proved by his own acts and
declarations—and still a new trial was refused, when there
was nothing else to show that he was empowered to
waive the plaintiff's right to the cooperage or to support the
verdict. In sustaining an objection to a question asked Shape,
in his deposition, as to whether plaintiff had employed him as
its agent, and after counsel for plaintiff had stated that he
desired to show by several witnesses that Shape was a sales-
man, and not an agent, and that he had exceeded his limited
authority, the court said: "The principle of law is laid down
that an agency cannot be established by the agent." While
this rule applies to the mere acts and declarations of one
claiming to represent another, it does not prevail when he is
under oath and subject to cross-examination, for he may
testify regarding his authorization the same as anyone else.
If it had been necessary for the plaintiff to prove that Shape
was not empowered to sell the cooperage, as it sought to do,
the testimony of its president that "the cooperage is and
always remains the property of the brewery," and "that we
do not sell our cooperage, and our traveling salesmen are not
authorized to sell it," and of other witnesses to the same
effect, stands in the record uncontradicted. Shape, in his
deposition, stated that he was not so empowered, but his
answer was excluded. He also stated that his charging
$101.25 for 45 half-barrels was a mistake. The amount of

the bill he made up roughly, and apparently without proper data for presentation to the assignee, was $869.75, but the bookkeeper of the keg department of the plaintiff testified that the balance due from Ecker was $381.95. His debts amounted to about $14,000. After payment of expenses the assignee had $1,392.15 remaining, and paid the creditors 10$\frac{3}{10}$ cents on the dollar. The plaintiff was paid this pro rata on $869.75, amounting to $89.58, which was remitted to Milwaukee by Curler & King. Of this latter sum it is apparent that about $11 was from the item for 45 half-barrels, at $101.25, which had been included, and that the dividend paid to plaintiff was more than double what it ought to have been, and that this occurred because Shape had made out the bill for more than twice the amount shown to be due by the plaintiff's books.

How much defendant would have paid for the beer without the cooperage does not appear. If he offered to sell the casks for $100, that may have been all he considered them worth to him at the time he bought from the assignee. If it be considered that, of the amount paid by the defendant to the assignee, $423, which is alleged in the complaint to be the value of the kegs, and which defendant admits, while asking for a judgment for that amount and objecting to one for their return to him, was paid for the barrels, leaving less than $150 for the beer they contained, then that sum was distributed among all the creditors, and the plaintiff received less than a fifteenth of the amount in its dividend from the assignee. It does not appear that the plaintiff or its officers were informed or knew that any part of the money it received came from its cooperage, or that Shape had consented to a sale, or attempted to waive the plaintiff's rights to the kegs, and accepting a part of the amount due on its claim against Ecker without such knowledge did not estop plaintiff from claiming its property. If it had been aware of all the facts from the beginning, and had waived its right, as contended, it would have been a poor business transaction to donate more than fourteen-fifteenths of its cooperage toward the payment of the other creditors, which would be the result if the plaintiff could not recover, for it never received anything

from the defendant directly or knowingly, or from Ecker, for the casks.

The court sustained defendant's objections to the following question in the deposition of Henry Uihlein, president of the plaintiff company: "When did you first learn that Mr. Shape had collected a cooperage account with your beer account from Mr. Grimmon, and are you now ready and willing to return him all money so collected for cooperage?" Until the defendant introduced some evidence tending to show that the plaintiff or its properly authorized agents had sold or waived the company's right to the casks, or knowingly accepted a part of the proceeds from them, it was not necessary for the plaintiff to show anything to the contrary, for the burden of proving estoppel was upon the defendant. The same was true regarding the check for $50.63 tendered by counsel for the plaintiff to the attorney for the defendant, but the evidence in this connection was ruled out.

A part of the answers and letters in the depositions which we have considered in order to give a more extended explanation were not admitted or offered in evidence, but this could not affect the result, for they tend to prove a limitation of Shape's powers, and plaintiff did not need to introduce them until after defendant had shown some authority in him to dispose of the cooperage.

On behalf of the defendant it is claimed that the grounds for the exceptions taken by the plaintiff to the action of the court in overruling objections are not specified as required by the case of *McGurn* v. *McInnis*, 24 Nev. 370, 55 Pac. 304, 56 Pac. 94. The reason for an objection should be called to the attention of the court once, but need not be repeated. If objection be made to the introduction of a deed because it is not signed or acknowledged by the grantor, or to a question upon the ground that it is hearsay, and the court overrules the objection, and counsel simply states, "We except," or, "Note our exception," it is sufficient, for the only fair implication is that he excepts to the action of the court in overruling his objections on the grounds he has specified, and of which the court has already been made aware. The decision in *McGurn* v. *McInnis* does not require more, but

an inference might be drawn from the syllabus in that case that the grounds of the objection must be repeated at length in the exception, which would waste time, incumber records, and serve no useful purpose. The specification regarding the insufficiency of the evidence is definite and complete, and, if it were the only one, it would be necessary to send the case back to the district court.

As there is no evidence to support the verdict and judgment, it naturally follows that the instructions which assume that there is such evidence were improperly given. Other specifications relate to questions similar to those which we have considered, or to rulings which are not likely to occur again.

The case is remanded for a new trial.