[No. 1759.]

## G. EDWARD C. TRAVERS, RESPONDENT, v. JOHN BARRETT AND MARY BARRETT, APPELLANTS.

1. HUSBAND AND WIFE—COMMUNITY PROPERTY—RIGHT TO CONTROL. Under the statute giving the husband the absolute management of the community property, any agreement made by the wife regarding it, though binding on her because she was free to contract for herself, does not impose any legal liability on the husband or on the property unless he authorized the agreement, or subsequently sanctioned it.

2. SAME. Where community property was used as a lodging house, the fact that the wife was attending to the business with the approval of her husband did not confer on her the power to sell the furniture or rent the premises.

3. PRINCIPAL AND AGENT—AUTHORITY OF AGENT—CONVEYANCE BY AGENT. One claiming under a conveyance, executed by a purported agent, must show that the agent was authorized by the owner, and the mere acting of one under the claim that he is an agent does not prove his authority.

4. HUSBAND AND WIFE—COMMUNITY PROPERTY—AGREEMENTS—VALIDITY. A husband informed his wife that she could sell the lodging business, conducted on community property, and rent the premises. The wife employed a broker to procure a purchaser for the furniture and a tenant for the building. The husband refused to sign the agreement employing the broker, and the wife signed it in her own name. The broker procured one who was willing to buy the furniture and to lease the premises on the terms required by the agreement, but the husband refused to make the sale or execute the lease: Held, that, as the husband neither authorized nor ratified the agreement made by the wife, he was not bound to pay the broker his commissions.

APPEAL from the District Court of the Second Judicial District of the State of Nevada, Washoe County; John S. Orr, Judge.

Action by G. Edward C. Travers against John Barrett and another. From a judgment for plaintiff, defendants appeal. Judgment against defendant John Barrett **reversed** and cause remanded. Petition for rehearing. **Denied.**

### STATEMENT OF FACTS.

The defendants are husband and wife, and owned, possessed, and conducted a rooming house in the City of Reno. It is alleged in the complaint that on the 1st day of August, 1907, in consideration of the efforts of the plaintiff to sell the furniture and fittings, and procure a tenant for the rooms and building, the defendant, Mrs. Barrett, acting for herself,

at the direction of the defendant John Barrett, and as his agent, executed the following writing:  "It is agreed that the Travers Realty Company shall act as my sole agent during the period of fourteen days from date hereof, for the sale of the following-described property:  Rooming house.  Consists ten rooms.  House located at northeast corner of Third Street and West Street.  Includes all furniture excepting piano, bookcase, lamp.  Will give three years lease at $60. The selling price to be not less than $700.  Terms, cash.  I agree to pay a commission of all over the purchase price on the above-named price.  Dated August 1, 1907.  [Signed] Mrs. J. Barrett.  Piano excepted."

It is further alleged that while this agreement was in full force on the 5th day of August, 1907, plaintiff procured a purchaser for the furniture and fittings who agreed and was ready and willing to take a lease of the premises for a term of three years at the rate of $60 per month as provided in the writing.  In the answer it is denied that Mrs. Barrett or any other person, acting in behalf of herself or for the defendant John Barrett, under his direction and as his agent, executed this writing.  The evidence shows without contradiction that the defendant Mrs. Barrett attended to the renting of the rooms, and that the building and furnishings were community property; that some time prior to the executing of this agreement to the plaintiff the defendant Mrs. Barrett informed her husband that she desired to quit renting the rooms and to go to San Francisco to attend her son, who was ailing there, and that, after some further talk over the matter, he informed her that she could sell the business and rent the building.  On the 1st day of August the plaintiff sent his representative, Redington, who presented the writing to John Barrett, and requested his signature.  Barrett examined the document and refused to sign it, stating that he would not do so for the reason that it might be construed to mean a sale of the whole property for $700, including the real estate with the furniture, and that he did not wish to sell the premises, but merely the furniture, and to rent the house. He further objected to the instrument for the reason that it did not give him the right to select the tenant, and that

under it Travers could rent the building to objectionable characters. Barrett finally stated that he did not like the agreement and would not sign it, and that he thought the price was too small.

After this, after Barrett had left Redington, the latter had a conversation with Mrs. Barrett. Some exceptions were noted on the paper, and it was signed by her, with her own name and while her husband was not present. Thereafter the plaintiff advertised the property for rent and the furniture and rooming-house business for sale, and brought different parties to see the premises, and both of the defendants were fully aware of the efforts being made by the plaintiff to sell the personal property and to rent the building. On the 5th day of August the plaintiff procured a purchaser for the furniture, who was willing to take a lease of the premises for the term of three years at $60 per month, and who was also ready to buy the personal property at the price of $1,200. On the same day the plaintiff tendered to Mrs. Barrett $700 in behalf of the purchaser, and demanded a lease of the premises, and on the following day a similar tender and demand was made upon John Barrett. Both refused to receive the money or execute a lease. On the 3d day of August the plaintiff showed the premises to one Nelson, who offered to take them at the sum of $1,200, but who subsequently stated that he had changed his mind; and on the 19th day of August John Barrett sold the personal property for $1,250 to Nelson, and gave him a lease for three years. The defendant excepted to the finding of the trial court that Mrs. Barrett executed the written instrument at the direction and as the agent of her husband and to the judgment rendered against him, and offered substitute findings, which were disallowed.

*James T. Boyd* and *A. N. Salisbury*, for Appellants:

I.   The property being community property, the husband had the sole and exclusive power to dispose of it, and Kate Barrett as the wife had no power over the property except such right as she might have by reason of it being her home. "The husband has the entire management and control of the

community property, with the like absolute power of disposition thereof, except as hereinafter provided, as of his own separate estate; *provided*, that no deed of conveyance, or mortgage of a homestead as now defined by law, regardless of whether a declaration thereof has been filed or not, shall be valid for any purpose whatever, unless both husband and wife execute and acknowledge the same, as now provided by law for the conveyance of real estate." (Comp. Laws, 515.)

II.   The agreement does not purport or claim to be the agreement of any other person than that of "Mrs. John Barrett," nor is there anything in the agreement, either by signature or recital, which shows that the agreement was made by an agent of John Barrett, or for John Barrett, or that John Barrett was in any way offering to sell, or authorizing any person to sell, the property described therein, so that, as far as the agreement giving any indication of ownership of the property is concerned, it cannot be supported, therefore the plaintiff must rely upon the vague and uncertain statement of John Barrett to Kate Barrett that she could sell the property as constituting Kate Barrett the agent of John Barrett for the purpose of renting valuable real estate for $60 per month and selling $1,250 worth of furniture.

III.   If Kate Barrett was the agent of John Barrett, the agency was special, and as such Kate Barrett must strictly follow the instructions. "Where the agency is a special and temporary one, the authority must be strictly pursued, and the principal is not bound if the agent exceeds his authority." (1 Am. & Eng. Ency. Law, 993, and authorities there cited; Mechem on Agency, secs. 283, 284.)

IV.   We submit that the respondent in procuring the signature of Mrs. Kate Barrett to an agreement or writing which John Barrett had already refused to sign, and for which refusal he had given good and sufficient reasons, has placed himself in a position where he cannot but admit that he knew that any signature which Mrs. Kate Barrett might give him was beyond the scope of her authority, even though she had attempted to sign such writing as agent for John Barrett, but the writing itself shows that she made no attempt to bind her husband, and said writing is not executed by

John Barrett, by any purported agent, but is only signed by the personal signature of Mrs. Barrett.

V. The appellant further submits that the court erred in refusing to strike out the finding hereinbefore referred to upon the appellants' motion, and that the court further erred in refusing to substitute in lieu thereof the finding proposed by the appellant, for the reason that the third finding as proposed by plaintiff and respondent, and as adopted by the court, is not supported by any evidence taken upon the trial, and that there was no evidence taken upon the trial of said action to justify the finding that Kate Barrett signed the writing in question at the direction of John Barrett, or as his agent, and for the reason that said finding is contrary to the evidence and as shown by the statement on appeal, and is very prejudicial to the appellant, John Barrett.

*C. L. Harwood*, for Respondent:

I. The judge, who heard the testimony and observed the witnesses, found that Mrs. Barrett executed this instrument as the agent of the defendant John Barrett. It may be that the trial judge took into consideration, in making this finding, the fact that Mr. Travers immediately proceeded to advertise and to bring numerous people to the premises for the purpose of endeavoring to make a sale, and it appears in the transcript as follows: That "thereafter the said Travers advertised the property for rent and the furniture and rooming-house business for sale, and brought various persons to the said premises and the said John Barrett and his wife, Kate Barrett, were fully aware of the efforts the said Travers was making to sell the personal property, and to rent the said building pursuant to the said agreement, and the said John Barrett made no objection thereto." So that, whether there was any question in the mind of the court about the authority to sign the paper, there is no room for any doubt considering the ratification of Mrs. Barrett's acts by the appellant. It is needless to cite any authorities on this proposition. Barrett ratified the acts of his wife, and completely estopped himself denying her authority.

By the Court, TALBOT, C. J. (after stating the facts):

Under the circumstances related can the defendant John Barrett be held to have authorized, or to have ratified, or to be bound by, the agreement made by his wife? As the statute gives him the absolute control and management of the community property, any agreement she made regarding it, although binding upon her because she was free to contract for herself, would not impose any legal liability upon him or upon the property, unless he had authorized the agreement, or had in some way sanctioned it after its execution. The fact that she was attending to the rooms and conducting a lodging-house business with his apparent approval would not confer any power upon her to sell the furniture or rent the premises; and, if she possessed any authority to bind him, it was because he informed her that "she could sell the business and rent the building."

No price or conditions were mentioned, and we need not determine whether this meant that she could sell for any amount and rent on terms which he would approve, or whether this authorized her to sell for any price or rent for any sum or period she desired, or delegate the power of selling to another with a large commission of five hundred dollars, more or less; for, if it did, the presentation of the agreement to John Barrett first, and the objections which he made to executing it, when he stated that it might be held to include a sale of the real estate, that plaintiff could lease it to objectionable characters, that the price was too low, and that he would not sign it, was ample notice to the plaintiff through his acting representative that John Barrett had revoked any power given to his wife to execute such an agreement, if she had been previously authorized. The writing did not purport to be signed by her for him as his agent, nor to be made by him, nor to be binding upon him. Upon its face it indicates that it is an agreement with plaintiff binding upon her alone. If it had purported to obligate him, and to be signed by her as his agent, still the refusal of John Barrett to execute the instrument himself would have been notice to the plaintiff that he revoked any authority in

his wife to sign it for him. It is essential for the safety and protection of property rights that one claiming under a conveyance executed by a purported agent show that he was authorized by the owner.

The mere acting of one under the claim or belief that he is an agent does not prove that he is clothed with authority. In that it is sought to hold the owner for the acts of a purported agent, this case may be compared with *Schlitz Brewing Company* v. *Grimmon*, 28 Nev. 235, and *Marino* v. *Williams*, 30 Nev. 360. If it be assumed that the husband had previously authorized the wife to make any agreement for the sale of the personal property and the renting of the premises, including the one which she signed, on no legal principle can it be held that he could not abrogate such authority or that he did not revoke it by his conduct as stated, or that he could be held liable on this agreement which he had refused to execute. Nor is there anything indicating that John Barrett ratified the agreement made by his wife, or any lease or sale attempted to be made by plaintiff. It does not appear from the record that he was aware that she had signed the agreement. He knew that the plaintiff was endeavoring to sell the property, and was bringing prospective purchasers to inspect the rooms and furniture.

It is not shown that the property was advertised at any fixed price or rental, or that John Barrett had knowledge that effort was being made by plaintiff to sell it on any terms not satisfactory to him, excepting that he refused to sign an agreement for, or to receive, $700. No sale was in fact made, nor lease executed under the agreement. True, plaintiff secured an applicant willing to buy the personal property and rent the rooms on terms agreed to by Mrs. Barrett. When she refused to accept the money, she may have broken her agreement or become liable individually, but, as no such lease or sale of the personal property was ever consummated by John Barrett, it cannot be said that he either authorized or ratified the sale which was not completed, and which was sought on terms to which he objected. Admitting that the agreement was sufficient to authorize the plaintiff to make a sale of the furnishings and to rent the premises, if the prop-

erty had been the separate estate of Mrs. Barrett, still there was no written lease or sale which could be enforced under the statute of frauds requiring a written memorandum, delivery, or payment where the value exceeds $50 and making a verbal lease void, if it is for a greater period than one year.

The judgment against the defendant. John Barrett is set aside, and the cause is remanded for a new trial.

### ON PETITION FOR REHEARING.

*Per Curiam:*

Petition for rehearing denied.