### [No. 1767]

## S. LUND, RESPONDENT, *v.* WASHOE COUNTY, APPELLANT.

1. BRIDGES—CONTRACTS—AUTHORITY TO BIND COUNTY.

> Under Comp. Laws, 2111, giving the board of county commissioners power to control and manage public roads and bridges, an engineer, authorized to supervise the repairing of a bridge, could not bind the county by requiring the contractor to perform extra work not called for by the contract.

APPEAL from the District Court of the Second Judicial District of the State of Nevada, Washoe County; *W. H. A. Pike*, Judge.

Action by S. Lund against Washoe County. From a judgment in favor of plaintiff, defendant appeals. **Reversed.**

The facts sufficiently appear in the opinion.

*T. F. Moran* and *Albert D. Ayres*, for Appellant:

I. In *Sadler* v. *Eureka County*, 15 Nev. 42, the court said: "The powers of the commissioners and the mode of exercising them, being derived from the statute, must necessarily depend upon its true construction. The restrictive provisions of the statute were evidently inserted for the protection and benefit of the public, and were intended to guard against favoritism, extravagance, or corruption in the letting of contracts for any public work. When the commissioners act under such authority, they must strictly follow conditions under which the authority is given. The law is well settled that county commissioners can only exercise such powers as

are especially granted, or as may be necessarily incidental for the purpose of carrying such powers into effect; and when the law prescribes the mode which they must pursue, in the exercise of these powers, it excludes all other modes of procedure. * * * If the power exists to make a contract for any other changes or alterations than those already specified, it could only be exercised by advertising for such work and letting the same to the lowest bidder. If the power attempted to be exercised by the commissioners was to receive judicial sanction, it would strip the public of the very protection which the legislature intended to give by the restrictions which it imposed. The commissioners might, in any case, agree in advance with some favorite contractor, that, if he would put in a bid for a sum much less than he knew the work could be done for, they would allow him sufficient for changes and alterations in the plan and specifications to fully remunerate him for his work, thereby defrauding the rights of honest competing bidders, as well as depriving the public of the protection given by the statute. Take the present case as an example: The commissioners might, if they were so disposed, under some plausible pretext, have so changed the plan and specifications as to have increased the original contract price of $22,000 to $53,000, the limit expressed by the act of 1879. The truth is, that under the provisions of the statute, the commissioners, previous to the letting of any contract for the erection of a public building, should always adopt a plan and specifications, and see that they call for the erection of such a building as may be required. When these have been considered and adopted, the advertisements should call for bids in accordance therewith. Justice to the competing bidders, as well as to the public, demands that the contract should be made and carried out in good faith and in strict conformity with the express provisions of the statute."

II. The complaint is upon a *quantum meruit* of the alleged value of more than three hundred dollars, but of the value, as found by the court, of more than one hundred dollars, while our statute (Comp. Laws, 437) provides for the construction or repair of bridges, the cost of which exceeds the sum of one

hundred dollars, only upon direct contracts let to the lowest bidder, after reasonable notice given by publication. From the authorities we deem it absolutely established that, were these extras alone the entire contract, and had the contract therefor been let by the board of commissioners themselves, otherwise than to the lowest bidder, upon reasonable notice and publication of at least two weeks in a county newspaper, the contract therefor would have been absolutely null and void and of no effect whatever, and in direct violation of section 437 of the Compiled Laws. But in the present case, where, as shown directly by paragraph 4 of the complaint, the contract for extras of the alleged value of more than three hundred and twelve dollars, and other values found by the court upon the trial of more than one hundred dollars, was awarded to the plaintiff upon a *quantum meruit* by a person shown by the complaint not even to be a county officer, but merely an employee of the board of county commissioners, the contract is of no more force and effect, and no more binding upon the defendant county, than if the same had been let to plaintiff by some person who had never stepped foot within the State of Nevada, or who was not in any way connected with its government.

III. It is most respectfully submitted that the complaint in this action not only fails to state facts sufficient to constitute a cause of action against the defendant and in favor of the plaintiff, but that it absolutely and conclusively shows that the contract relied upon was *ultra vires* null and void, and that the complaint is fatally deficient in that, even if it were brought upon a valid and binding contract, the facts constituting a proper presentation of a claim thereof to the board of county commissioners of Washoe County and their action thereon do not appear from the complaint.

*C. L. Harwood*, for Respondent:

I. The doctrine of *ultra vires* was formerly strictly applied to private decisions, where this principle was applied and carried to its logical conclusion, but the doctrine that enables a private corporation to receive and retain the benefits of a contract, either express or implied, and then plead that its

agents had no authority to make the contract, has long since been exploded; and private corporations are now uniformly held to the same rules in this respect as apply to private individuals. The same change is becoming marked in the case of municipal corporations, where the contract is within the general power of the municipality, where the municipality has received the benefits, and where there has been no fraud. Numerous cases might be cited to this effect, but we refer to only the very recent ones: *Colorado Springs* v. *Colorado City*, 94 Pac. 316; *People* v. *Zimmerman*, 109 N. Y. Supp. 396. See, also, on both propositions, 28 Cyc. 1050, title "Municipal Corporations," and numerous cases cited; 28 Cyc. 669. This principle was very early established in Nevada. (*Tucker* v. *Virginia City*, 4 Nev. 20; *Fitton* v. *Hamilton City*, 6 Nev. 196.)

II. All statutes relating to the same subject must be construed together and must be reasonably construed. The general proposition contended for by the appellant as to the limitations upon the powers of officers of municipal corporations are elementary. We submit, however, that the peculiar circumstances attending the execution of a contract for the placing of piers and abutments for bridges, or any other public works, are such that it is unreasonable, and has been so decided in numerous cases, to say that the engineer or person charged with the superintendence of the execution of the contract has no power, in the interests and for the protection of the municipality, to direct necessary alterations and changes from the plans and specifications to meet the exigencies of the occasion or to provide for unforeseen circumstances. It would be unreasonable and ridiculous in a case like this, where the work was under way and it was found that the piers or abutments about to be placed would rest on insecure foundations unless excavations were made, to require that all work necessarily and presumably carried on in the stream and subject to destruction by the elements should be stopped while the necessary red tape might be unreeled to allow work to be done by contract after advertisement for bids. As is pointed out in some cases, the contract for the additional work might go to a third party, and, aside from the difficulties and danger above referred to, a confusion and conflict would result, to the detri-

ment of the county.  In such case the engineer in charge has
the undoubted authority to order the work to be done for the
protection of all parties.  In this case there could,. in the
nature of things, be no estimate, even approximate, of what
excavations might be necessary.  It might cost $50, or it
might cost $100, or even more.  If the engineer saw that the
excavation would run into a very high figure, he would be at
liberty to call the work off, and, if thought advisable, let a
contract for it.  At any rate, the contractor's remedy is only
upon a *quantum meruit*—in other words, what the work was
actually worth at the time and under the circumstances then
present.  If the county and the contractor do not agree, then
the question of what work is worth becomes a matter for judi-
cial determination, and presumably such determination would
be correct and no one injured.

III.  We submit that the appellant having received the
benefit of the extra work performed by the respondent, and it
having been determined by the judgment of the court below
that he is entitled to recover for it, the judgment should stand
and the county pay for it.

. By the Court, TALBOT, J.:

This appeal is from a judgment, and is based on the judg-
ment roll.  The only contention of the appellant is that the
complaint, which contains the following allegations, does not
state a cause of action:

"(2) On or about the 14th day of August, 1907, the parties,
plaintiff and defendant, made and entered into a valid written
contract, whereby, for a valuable consideration therein named,
the plaintiff undertook and agreed to erect, build, and finish
certain piers and abutments on a certain public bridge in the
said county known as Mayberry bridge, and to do similar
work on a certain other public bridge, also situate in said
county, known as Verdi bridge; both of said bridges being
erected over and across the Truckee River, and intended for
the use of public travel.  That it was provided in said con-
tract that the work should be 'conformable to the plans and
specifications of the said work on file in the office of the
county clerk of said Washoe County,' to which plans and

specifications and said agreement on file in said county clerk's office the plaintiff hereby refers.

" (3) And in and by said contract it was further provided that the work should be done to the satisfaction, and under the direction, of F. R. Nicholas, to be testified by his writing or certificate; and plaintiff avers that he undertook and performed all of the matters and things in and by the said contract to be by him done, performed, and kept, and that the said F. R. Nicholas gave the certificate approving the work of the plaintiff as required.

" (4) That in the performance of the said contract by the plaintiff certain extra work, not provided for in the same, and not shown, or in any wise indicated, by the plans and specifications aforesaid, consisting of excavations for the foundations of said piers, was ordered by the said F. R. Nicholas, the engineer in charge, for and on behalf of the said defendant, and was necessary to be done and performed. That under the direction of the said engineer the plaintiff thereupon did and performed the same. That the cubic measurement of such excavation is shown by the schedule hereto annexed and made a part hereof, and to which reference is hereby made. That the price charged therefor, namely, the sum of $1.50 per cubic yard, is a fair and reasonable rate or charge, and is the reasonable value of the extra work so done and performed.

" (5) That the total value of said excavation work was the sum of $167.55, and that the balance of said extra·work, entirely without the said contract and the plans and specifications aforesaid, and ordered by the said engineer to be done as necessary extra work, and so accordingly done, performed, and furnished by the plaintiff, consisted in the removal of rock wall at said Mayberry bridge for which the plaintiff has charged the sum of $70; also rock wall removed at Verdi bridge, for which the plaintiff has charged the sum of $75. That such charges are the fair and reasonable value of the said extra works, and that the same are set out in the schedule hereinbefore referred to, and to which reference again is hereby made.

" (6) That the total cost and value of all of the said extra

work so done, furnished, and performed by the plaintiff for the said defendant is the sum of $312.55, and the claims therefor have been duly made by the plaintiff to the board of county commissioners of said defendant, and the same have not been allowed."

Section 2111 of the Compiled Laws gives boards of county commissioners power to control and manage public roads and bridges within their respective counties, and to make such orders as may be necessary to carry this control and management into effect. It is further provided as follows:

Section 448, approved March 9, 1866: "All work hereafter done upon highways, streets or alleys, whether in opening, improving or keeping the same in repair, shall, when the public cost of such contemplated work shall exceed one hundred dollars, be done by contracts let to the lowest responsible bidder, and public notice of at least five days shall be given, describing the work to be done, the time and place that bids will be received, and the means of paying for such work. Such bids shall be sealed, may all be rejected, and if any are accepted, it shall be that of the lowest bidder who is responsible, or will give satisfactory security. In all cases of emergency, it shall be discretionary with the board of county commissioners to let contracts for repairs without giving the five days' notice, as is contemplated in this section."

Section 437, approved February 21, 1877: "No bridge, the cost of the construction or repair of which will exceed the sum of one hundred dollars, must be constructed or repaired except on an order of the board of county commissioners. When ordered to be constructed or repaired, the contract therefor must be let out to the lowest bidder, after reasonable notice given by the board of county commissioners, by publication at least two weeks in a county newspaper, and if none, then by three posted notices—one at the court-house, one at the point to be bridged, and one at some other neighboring place. The bids to be sealed, opened and contract awarded at the time specified in the notice. The contract and bond to perform it must be entered into to the approval of the board of county commissioners."

No officer excepting the board of county commissioners is

given any authority to obligate the county for bridges, or for work upon public highways, and it is clear from the language of the statute that the board is not authorized to let contracts in excess of $100 for the construction or repair of bridges or roads, except to the lowest bidder, after giving notice, or in cases of emergency.

On behalf of the appellant it is claimed that the board, composed of the elective officers of the people, could not delegate to the engineer, or to any one else, their discretionary power to contract for or order work done, and could not authorize the extra work itself, without advertising for bids, as it amounted to over $100. These propositions do not come directly within the facts stated in the complaint, for it fails to show that the board without advertising, or in any other way, ordered the extra work, recovery for the value of which is sought, or attempted to authorize the engineer to order it done. Paragraph 2 of the complaint indicates that the plaintiff had contracted to build and finish certain abutments and piers for the bridges named, in accordance with the plans and specifications on file in the clerk's office, paragraph 3 that this work should be done to the satisfaction and under the direction of the engineer, and paragraph 4 that certain extra and necessary work, not provided for in the contract or in the plans or specifications, consisting of excavations ordered by the engineer, was done under his direction. As there is no statute vesting the engineer with any power to create a liability against the county, and it does not appear from the complaint or contract that the board attempted to confer upon him any authority to order additional work to be done, or to do more than to supervise, direct, and report upon the work provided for in the contract, there is a failure to state a cause of action. This would be true even in the absence of the prohibitory language quoted from the statute. It is not claimed that any emergency existed by reason of which it was necessary for additional work to be done before there would be time for the board to give notice, and contract for its performance by the lowest bidder. It is not denied that the extra work was beneficial and was done in good faith.

Conceding that the board could have empowered the

engineer to order extra work, it would be incumbent upon the respondent, under the ordinary rules of agency, to show that its order was broad enough to authorize the doing of the extra work. (*Schlitz Brewing Co.* v. *Grimmon*, 28 Nev. 235; *Travers* v. *Barrett*, 30 Nev. 402.) The powers of the engineer are generally different when he is employed by private corporations or by individuals. In railway construction he is usually the agent of the company, with authority to direct where the work should be done, and how much should be performed. Of course, when it is not for the public, there is no statute requiring notice, or limiting the power of contracting to certain persons or officers, as there is when it is sought to charge the county or collect from the public funds. In *Sadler* v. *Eureka County*, 15 Nev. 39, and in *Washoe County* v. *Eureka County*, 25 Nev. 359, it was held that claims for furnishings or alterations, amounting to or aggregating more than the maximum authorized, without advertising for bids, could not be recovered, although ordered or approved by the board of county commissioners, and in these cases, and in many others, some of which are cited therein and at page 476 of 11 Cyc., the principle is conclusively enunciated that boards of county commissioners derive their authority solely from the statutes, and the exercise of their powers is restricted to the method prescribed by law, and whoever deals with them does so with full notice of the extent of their power and the manner of its exercise.

Respondent relies largely upon the opinion in *Pacific Bridge Co.* v. *Clackamas County* (C. C.) 45 Fed. 217. A close examination of that case reveals that it does not apply under our statute and the facts existing here, except that it cites and distinguishes *Milling Company* v. *Lane County*, 5 Or. 265, which supports and is favorable to appellant. In the Clackamas County case the board ordered changes to be made in the abutments, and the court held that the statute had been so amended that the board was authorized to make alterations without advertising for bids. There the statute required no notice, and the work was ordered by the proper board as authorized by statute. Here the statute requires notice where the value of the work exceeds $100, and none was given, and

the work was not ordered or authorized by the board or officers empowered by law. In the Lane County case the bridge was built under the supervision of a superintendent appointed by the county court. He bought lumber for an apron to the bridge without being authorized, and it was held by the supreme court that the county was not liable for the price of the lumber. It was said in the opinion: "The plaintiffs place their right to recover on the ground that the superintendent Powers made a contract for the lumber with plaintiffs, which the defendant, by accepting the bridge and offering to pay part of the price of the lumber, ratified and adopted as the contract of the county. This amounts simply to an implied contract from alleged benefits received. The general doctrine unquestionably is that, when one receives the benefit of another's work or property, he is bound to pay for the same, and this doctrine applies as well to corporations as to individuals in cases where there is no restriction imposed by law upon the corporation against making in direct terms a contract like the one sought to be implied; but, where there exist legal restrictions which disable a corporation to agree in express terms to pay money, the law will not imply any such agreement against the corporation. (*Brady* v. *Mayor*, 2 Bosw. 173; *Zottman* v. *San Francisco*, 20 Cal. 102–105, 81 Am. Dec. 96.) This rule may sometimes work a hardship upon a contractor, who, without having considered whether the law has been complied with or not, has performed labor or furnished material for a public corporation, and expects compensation therefor, the same as if it had been done or furnished for a private individual. But nevertheless the authorities hold that a contractor, no less than officers of a municipal corporation, when dealing in a matter expressly provided for by law, must see to it that the law is complied with. Where work is done, without authority, upon the streets of a city, liability does not follow because the streets must be improved thereby, or their use continued. Such continued use constitutes no such evidence of acceptance as to create a liability against the corporation. (20 Cal. 107.)"

It is not necessary to consider the other questions which have been argued by counsel.

It is ordered that the judgment be reversed, and the case remanded to the district court.