[No. 1748.]

FRANK MARINO, RESPONDENT, *v.* LEE WILLIAMS AND HENRY WEBER, APPELLANTS.

1. LANDLORD AND TENANT—SUBLETTING—RIGHT TO SUBLET. Where a lease was given with a privilege of renewal for a like term at a rental to be determined by appraisers, the lessees having power to sublet or sell their interest in the term, any agreement or sublease the lessees might make would not bind the lessor beyond the first term, unless the original lease was renewed under the term thereof.

2. SAME—RENEWAL—EXERCISE OF OPTION TO RENEW—WAIVER BY LESSOR OF NOTICE. Where a lease was given for a term, with a privilege of renewal at a rental to be determined by appraisers, the lessor, by joining in the appointment of appraisers two days after the expiration of the lease, thereby waived the right to notice by the lessees of their exercise of the privilege of renewal, or to object that the request for the appointment of appraisers had not been made in time.

3. SAME—RIGHT OF LESSEE TO RENEW. Where a lease was given for a term, with the privilege of renewal, at a rental to be determined by appraisers, the lessees having power to sublet, the lessor could neither require nor refuse a renewal by the lessee; the latter being entitled either to demand a renewal or surrender the premises.

4. SAME—SURRENDER BY LESSEE—LESSOR'S OBLIGATION TO SUBLESSEE. Where a lease was given for a term, with a privilege of renewal, the lessees having power to sublet, and the lease containing no provisions for forfeiture for failure to pay rent, if the lessor voluntarily accepted a surrender of the lease before the expiration of the term, he thereby obligated himself in the place of the lessee to subtenants for the remainder of the term, and if there had been a renewal of the lease a similar obligation would attach during the renewed term.

Points decided.

5. SAME—RENEWAL BY LESSEE—OBLIGATION TO RENEW. Where a lease was given for a term with the privilege of renewal, at a rental to be determined by appraisers, the lessee is not bound to exercise the privilege of renewal until the rental value had been fixed by the appraisers, and then, if he deemed it too high, could surrender the lease, and, in the absence of a request for renewal by the lessee, either before or after the appointment of appraisers, merely joining in their appointment, did not amount to a renewal or a demand therefor by the lessee.

6. SAME. If a lease were to run for two years at a specified rental, and for an additional two years at a rental to be fixed by appraisers, at the end of the first two years, the parties would be bound by the action of · the appraisers in fixing the rental; but, if the original lease simply gave the lessee the privilege of renewing at the end of the first term, he would not be bound to renew if not satisfied after the appraisement·

7. SAME—ASSIGNEES OR SUBTENANTS—ASSIGNEES OF PART OF TRACT. Where a lease was given for a term, with the privilege of renewal, the lessees having the power to sublet, if the original lease did not provide for renewal on a part of the land, it is immaterial whether a sublease be construed as a sublease or an assignment of a part of the premises, as the subtenant for such part cannot demand a renewal in either case.

8. SAME. Where a lease was given for a term, with the privilege of a renewal, the lessee having the power to sublet, if the subtenant had an assignment of the whole of the premises, he could demand a renewal on the whole of the premises in the same manner as the lessee.

9. SAME—AGREEMENT BY LESSOR. Where a lease was given for a term, with the privilege of renewal, the lessee having power to sublet, if the lessor join in a sublease of a part of the premises with privilege to the subtenant of renewing, the privilege of renewal on a part of the premises could be enforced by the subtenant against the lessor and his successor in interest.

10. INJUNCTION—PRELIMINARY INJUNCTION—DISCRETION OF COURT—GROUNDS. In an action to compel defendant to renew a sublease, plaintiff claiming to be entitled to a renewal under the lease, if the trial court entertained serious doubts regarding plaintiff's final right to have a restraining order, a temporary injunction was properly granted to run until further order of the court, and its dissolution was properly · refused until such order.

APPEAL from the District Court of the First Judicial District of the State of Nevada, Esmeralda County; *F. P. Langan*, Judge.

Action by Frank Marino against Lee Williams, *et al.* From an order refusing to dissolve a preliminary injunction issued on the complaint, defendants appeal. **Injunction set aside and dissolved.** Petition for rehearing. **Denied.**

The facts sufficiently appear in the opinion.

*Detch, Carney & Stevens*, for Appellants:

I. We concede that if the instrument from Walker and Baldwin to Wollner & Co. was in fact and in law an assignment of the entire contract so that Wollner & Co. had become substituted in the place of Walker and Baldwin, plaintiff as the assignee of Wollner & Co. could maintain this action, and we would not be here contending otherwise. Our contention is, however: First—That the instrument from Walker and Baldwin to Wollner & Co. is a sublease, so called and understood by the parties, and cannot under the authorities be construed as an assignment. In order to constitute an assignment the whole term and whole estate must be granted. (*McNeil* v. *Kendall,* 128 Mass. 245.) "Whereas a lessee leases a part of the premises to another, for the remainder of his term, with easements in the other part, this is an underlease and not an assignment." In the case at bar, Walker and Baldwin sublet to Wollner & Co. a specific portion of the entire premises and an easement in another portion, thus bringing it within the rule laid down in *McNeil* v. *Kendall.* There is no contention that either Wollner & Co. or the plaintiff ever paid any rent to the lessor, Williams, or that he in any way ever recognized them as assignees. Again, we say that the instrument cannot be construed as an assignment for the reason that it contains different covenants from those in the original lease, particularly the covenant relative to renewal. The original lease provides for the renewal of the lease of the entire premises, while the sublease provides for a renewal of the lease on a subdivision. This constitutes a new and independent contract on the part of the lessees, Walker and Baldwin, that they will renew the lease on a subdivision of the premises. The original lease authorizes the lessees to sublet the premises, or to sell and convey their interest therein. They could do either. They elected to sublet a portion of the premises with a reservation of an easement in a portion of the premises sublet. Wollner & Co. elected to take a sublease instead of purchasing the interests of the lessees in the term, as expressly stated in the instrument itself as shown by the last three lines of the granting clause, to wit: "This lease

being a sublease of a portion of the ground described in lease of date November 19, 1904." It would seem that there is nothing in this contract for the court to construe. The parties themselves have agreed as to the character of the instrument, and the court will not give it a different construction in favor of either of the contracting parties. Wollner & Co. signed the instrument, which they expressly declare to be a sublease. Neither Wollner & Co. nor their assignees can be heard to say that it is not a sublease, no matter what the court might construe the instrument to be in favor of one who was not privy to the contract.

II. The amended complaint fails to show that the lessor agreed to renew the lease on a subdivision of the entire premises. The original lessor never contracted for such a renewal, and the lessees could not enforce a renewal of that kind.

III. In appointing appraisers after the expiration of the original term Williams simply demonstrated his willingness to grant a new lease, in compliance with the privilege granted in the old lease, or that he was willing to execute a new lease upon such rental as might be fixed by appraisers entirely independent of the old lease. In either case an acceptance by Walker was necessary, and a new lease executed. (Jones on Landlord and Tenant, 338.)

IV. To grant the relief demanded by the plaintiff in this action the court must first make a contract for the parties and one which would be unfair and unconscionable. (*Long* v. *Daniels*, 63 Am. Dec. 477; Story's Eq. Jur. 742–746; *Johnson* v. *Hubbell*, 66 Am. Dec. 773; *Willard* v. *Tayloe*, 75 U. S. 501; *Schroeder* v. *Gemeinder*, 10 Nev. 356.)

*Thompson, Morehouse & Thompson*, for Respondent:

I. It will be seen by the pleadings in the cause that the original lease terminated on November, 19, 1906; that it contained an agreement to renew for another term, by the appointment of appraisers, fixing the rental value, for the succeeding renewed term. It will also be seen by the pleadings that such original lease was renewed, because by full consent of lessor and lessee they appointed appraisers and

fixed the rent, and that afterwards the lessees surrendered. Counsel in their brief say: "Walker declined to accept such renewal upon the terms so fixed by the appraisers and delivered possession of the premises held by him to the defendant, Williams." This statement is outside the record and is immaterial because it matters not in this cause what Walker did after the lease was renewed as per the terms and agreements thereof, for the terms of the lease are "with a privilege of a renewal for another two years, from and after the expiration of the first two years, at a rental per month to be determined by a board of three arbitrators or. appraisers, one to be selected by each party, and the third to be chosen by those two." This is the averment of the amended complaint, and not denied in the answers. This was done, as appears by the complaint and admitted by the answers. Therefore the original lease was renewed and stood as a valid lease for two years more. True, it would ordinarily be the duty of the tenant to elect the renewal within the term, or before the lease had expired, as avowed in the amended complaint, but if he did not do so, and both lessor and lessee acted under the lease, and consent to appoint appraisers under the lease, and carry out its provisions, neither can afterwards be heard to deny that the notice of election was not in time, especially when the rights of other parties are involved in such election. Also, by the act of appointing, etc., the lessor waived any notice, and is bound by his acts. (*Long* v. *Starford*, 103 N. Y. 274; *Hansauer* v. *Dahlman,* 18 N. Y. App. Div. 475.) Besides, the facts admitted in the answer constitute a complete renewal.

II.   We are suing to divide up a lease and get a part of the land demised, but we are suing to get our lease upon the whole of the land let to us, and upon the contract of renewal. Now, it is said in 18 Am. & Eng. Ency. Law, pp. 366–7, "When, before surrender, third persons have acquired an interest in the demised premises, a surrender by the lessee cannot affect their rights; as to them the surrender operates only as a grant subject to their rights, and the interest surrendered is considered as to continuing to exist so far as is

necessary to preserve their rights," and the rights of the sub-
lessee are not affected.

III.   Denials of equities do not always entitle the court to
dissolve an injunction, but in this case there are no denials
of equities.   The injunction is issued as auxiliary to the
suit for specific performance.   The injunction is to hold the
property in *statu quo* pending the trial.   Its main purpose is
to prevent Weber, the purchaser, after the making of a lease,
with interfering with the property.   Then the only denial
approaching a denial, which denies an equity, within the rule
of denials, which would authorize the court in dissolving the
injunction, upon the coming in of the verified answer, is the
denial, upon information and belief, that, to use the language
of Weber's answer, "Defendant further upon information
and belief, denies, that on or before the 19th day of Novem-
ber, 1906, the plaintiff, Frank Marino, gave due notice to the
said Lee Williams and J. F. Walker, and that he elected to
take the renewal." And while in Williams's answer, he denies
that Marino gave notice of his election to renew his (Mar-
ino's) lease, he only denies that notice of his (Marino's) elec-
tion to renew the lease was given to him (Williams).   He
does not deny that notice was given to Walker, the only per-
son to whom Marino had to give any notice, if he had to give
notice at all.   And in the answer Walker says: "Admits
that on or about the 19th day of November, 1906, the plain-
tiff endeavored to persuade this defendant to appoint apprais-
ers who should fix the rent due the defendant, Lee Williams,
as well as the subtenants, but denies that he refused to do
so." Certainly this is no denial.   Now, then, Weber's denial
on information and belief is no denial.   (7 Ency. Ev. p. 325;
*Lake Shore & M. S. R. Co.* v. *Felton*, 103 Fed. 227; *Porter* v.
*Jennings*, 26 Pac. 965; *Poor* v. *Carleton*, 19 Fed. C. No. 11,272.)

IV.   Dissolution or continuance of a preliminary injunc-
tion is a matter within the discretion of the trial court, and
unless it appears that its discretion has been abused the
action of the court will not be disturbed on appeal.   (*Granis*
v. *Lorden*, 103 Cal. 472; *Santa Cruz Assn.* v. *Grant*, 104 Cal.
306; *Fowler* v. *Heinrath*, 2 Pac. 248; *Marks* v. *Weinstock*, 121
Cal. 55; *Einstein* v. *Bank of Cal.*, 137 Cal. 47.)

*Detch, Carney & Stevens*, for Appellants, in reply:

I. We rest our case upon two propositions: First—We contend, as in our original brief, that the instrument from Walker and Baldwin to J. Wollner & Co. is a sublease and not an assignment for reasons and upon authorities cited heretofore. Second—If the court holds against us on the first proposition, we then claim that plaintiff, as assignee, cannot compel the lessor to renew the lease on a subdivision of the entire premises demised in the original lease, for reasons and upon the authorities also assigned in our original brief. As the respondent still insists that his right to maintain this suit is based upon a renewal of the lease from Williams to Walker, which, it is alleged, was surrendered for the purpose of destroying the privity of estate between Marino, the plaintiff, and Williams, by virtue of the alleged assignment from Walker and Baldwin to J. Wollner & Co., and from the latter to Marino, we need to notice only some of the points which are advanced by the respondent in support of such contention, and to strengthen the position in our original brief by the citation of further authorities. In the first place, the conclusion pleaded by respondent in the amended complaint to the effect that the lease was surrendered by Walker, and such surrender accepted by Williams for the purpose of destroying the privity of estate between Marino and Williams is illogical, for the reason that if such had been their desire, or purpose, they had simply to let the old lease expire without taking any action whatever. Williams then had a right to take possession without reference to any rights of Marino. It does not appear that Walker ever gave notice of an election to renew the lease, and this should have been done at or before the expiration of the old lease. (*Shamp* v. *White*, 106 Cal. 220; *Renoud* v. *Doskam*, 34 Conn. 512; *Delashman* v. *Berry*, 20 Mich. 292.)

II. The answer of the defendant, Williams, positively denies all the equities of the complaint. The answer of Weber denies some matters upon information and belief, but Weber was not connected with the transaction in any way and could not be expected to deny positively any facts alleged to have occurred between the parties prior to the

time he became interested as the grantee of Williams, but he certainly should have the benefit of the positive denials of his grantor.

III. It is true that many authorities hold, and we think properly, that the dissolution or modification of a preliminary injunction upon the filing of an answer is a matter within the discretion of the court, but it must be a sound legal discretion, not an arbitrary one. The allegations of the complaint were insufficient to justify the issuance of the injunction in the first instance, and the amended complaint furnished no better grounds. It is true the latter contains an allegation that "plaintiff has no plain, or speedy or adequate remedy" at law, but that is simply a conclusion of the pleader. The facts pleaded do not justify such a conclusion. The facts pleaded do not show that irreparable injury would result from the threatened acts of defendants, and do not plead insolvency on the part of the defendants.

By the Court, TALBOT, C. J.:

This is an appeal from an order made after the filing of the amended complaint and answer refusing to dissolve a preliminary injunction which had been issued upon the complaint at the time of the commencement of the action. As facts sufficient to control the questions involved are admitted by the pleadings, they may be determined without reference to the defenses set up in the answers, wherein it is alleged that plaintiff declined to renew his sublease, and refused to join in appointing appraisers to fix the rental therefor, which allegations are deemed denied, but which, if established on a trial, would prevent plaintiff from obtaining the relief he seeks in this action.

It is shown by uncontroverted allegations that Lee Williams, one of the defendants, leased to J. A. Walker and C. A. Baldwin a lot or parcel of land in Goldfield, by an instrument in writing, which provided: "This lease is for a term, commencing on the 19th day of November, 1904, and expiring on the 19th day of November, 1906, with a privilege of a renewal for another two years from and after the expiration of the first two years, at a rental price per month to

be determined by a board of three arbitrators or appraisers, one to be selected by the party of the first part, and one by the party of the second part, and a third to be chosen by these two. * * * This agreement shall bind the heirs, executors and administrators of the parties hereto, with full power to sublet the same, and to sell and convey the interest in said term, owned by the party of the second part."

On May 4, 1905, Walker and Baldwin sold and assigned, or sublet, the full term in their lease to a part of the demised land to J. Wollner & Co., who on the 12th day of October, 1905, assigned to plaintiff their interest or sublease, which contained a provision for a renewal for an additional two years from the 19th day of November, 1906, similar to the one in the original lease. Prior to that date Baldwin had sold and assigned his interest to Walker.

It is also alleged in the amended complaint: "That said Lee Williams and said Walker refused to appoint appraisers or to comply with the covenants and conditions of said lease to and with plaintiff; but, without the knowledge or consent of plaintiff, they, the said Lee Williams and J. F. Walker, on or about the 21st day of November, 1906, appointed at their own instance appraisers, who appraised and fixed the monthly rental of the whole of said lands and premises, as leased to said Baldwin and Walker, in the sum of $400 per month, and failed and neglected to appraise and fix the monthly rental of the lands and premises occupied and possessed by the plaintiff herein. * * * That after said appraisement so made by said Williams and Walker, * * * the said Walker surrendered his said lease to said Williams, intending, as plaintiff is informed and believes, to seek thereby to destroy the privity of estate between plaintiff and said Williams, and the said Williams took and accepted the surrender thereof, as plaintiff is informed and believes, with the intent and purpose to destroy the privity of estate between plaintiff and said Williams. But plaintiff avers: That by reason of the appraisement so made by the said Williams and said Walker, said Williams elected to continue said lease, and is estopped to deny the privity of estate growing out of the assignment of the part of the lease by said Walker and Baldwin to said J.

Wollner & Co., to this plaintiff, and that this plaintiff was and ever since the 4th day of May, 1905, up to the sale of said land and premises, to Henry Weber, as hereinafter stated, the lawful tenant of said Lee Williams and J. F. Walker, and possessed and entitled to the possession of the lands and premises described in 'Exhibit A.' That some time in the month of December, 1906, the said Lee Williams sold and transferred the lands and premises leased to said Walker and Baldwin to defendant Henry Weber, he, the said Henry Weber, then and there having full knowledge of the terms and conditions of plaintiff's lease, and his right to a renewal thereof as herein stated, and took and accepted said lands and premises subject to said plaintiff's lease and the right to the renewal thereof, and plaintiff avers that he has now, and ever since the purchase of said lands and premises by said Henry Weber had, a good and valid lease on so much of said land and premises purchased by said Henry Weber from said Lee Williams as is described in 'Exhibit A.' That the term of said lease begins November 19, 1906, and ends November 19, 1908. And that said Williams and Weber should appoint appraisers to and with said plaintiff, and fix the monthly rental of said lease, and accept from plaintiff the payment thereof."

The plaintiff demanded a renewal of his sublease and tendered $175, which he alleged to be the reasonable monthly value of the part of the premises occupied by him, and also made two tenders during two months of $400 each. Under the circumstances related, was the defendant Williams, or his grantee, Weber, under any obligation to renew the sublease on the part of the premises held by plaintiff?

Although the holders of the original lease were authorized to sublet, any agreement they made would not hold the owners of the property beyond the first term of two years, and subleases would not be binding against the owners after the 19th day of November, 1906, unless the original lease was renewed. If Williams and Weber and the property are to be held, it must be by reason of some agreement, act or omission on their part sufficient to create a liability against them, and not upon any covenant made by Walker and

Baldwin standing alone. No doubt, by joining in the appointment of appraisers two days after the expiration of the lease, Williams waived the right to any notice for that purpose, or to object that the request for the appointment of appraisers had not been made in time.

The sublease contains a clear provision for a renewal, but it was not signed nor assured by Williams or Weber against whom relief is sought, and it becomes necessary to consider whether there was a renewal of the original lease, and whether Williams made any agreement or performed any act, which would be binding upon him or the property after the expiration of the original lease which he had executed. Therein he had given the holder the option or privilege of renewal at a rental to be fixed by appraisers. Upon such expiration he could neither command nor refuse a renewal. He was subject to the will and pleasure of C. W. Walker. If the latter demanded a renewal of the lease, he would be bound to grant it; but if, instead of requesting a renewal, Walker offered to surrender the original lease and possession, Williams had no alternative but to accept the surrender, unless he abandoned the property, for Walker, at least so far as his obligations ran to Williams, was free to not exercise the privilege of renewal, and to decline to bind himself to pay rent, or to assume the responsibilities of a tenant for a renewed term. Upon the surrender of the lease and possession by Walker, Williams, being in no position to compel a renewal and the payment of rent for a further term of two years on the whole of the property to which he would have been entitled, if Walker under his privilege had taken a renewal, was under no obligation to renew a sublease on part of the property, something which he had never agreed to do.

In accordance with the contention of respondent, it may be conceded, for the purposes of this case, that under the circumstances existing here, and under a lease containing no provision for forfeiture upon failure to pay rent or for other cause, the voluntary acceptance of a surrender of the lease, and of possession by the landlord, may obligate him in the place of the lessee to subtenants for the remainder of the term, and that, if there is a renewal of the lease, a similar

obligation attaches during the renewed term. So far as is shown here, there was no execution of, nor demand for, a renewal, and the term and the leasehold interest in the property as far as granted by the owner had expired. It is urged that the appointment of appraisers by Williams and Walker to fix the rental value amounted to a renewal; but on reflection we believe that Walker was not obliged to exercise his privilege of a renewal at a rental value to be fixed by appraisers, until that value had been ascertained, and then, if he deemed it too high, he could surrender the lease and premises, instead of taking a renewal which was subject to his option. Formally, a renewal lease could not have been drawn upon the mere appointment of the arbitrators, nor until after the amount to be inserted for rent had been fixed by them. As it does not appear that there was any request for a renewal after the amount had been determined, nor before, in the absence of such request we conclude that the mere joining in the appointment of appraisers did not amount to a renewal nor to a demand for one, and, consequently, that, after the expiration of the original lease, there was no privity of contract between the owner of the premises and the holder of the sublease. If the lease had provided that it was to run for two years at a specified sum, and for an additional two at a rental to be fixed by appraisers, at the end of the first period the parties would have been bound by the action of the appraisers; but the words quoted gave the privilege or option to the holder of the lease, which did not make it incumbent upon him to take the renewal, if he was not satisfied with the new rate. By surrendering possession, instead of demanding a renewal after appraisement, the provision for a renewal terminated and became ineffective. The original lessor or owner of the property was no longer protected by the original lease, and as no renewal was executed or demanded, and he could enforce none, which would enable him to collect the rent from the holders of the original lease for the full term, there was no obligation requiring him to renew the sublease on only a part of the premises covered by the lease he had given. As indicated by the cases cited for appellants, courts have distinguished and often held that a demand for a

renewal is necessary, when the lease gives the privilege of a renewal, when none would be required, if it merely provided for an extension of the lease at the holder's option.

Much of the briefs pertain to the question whether the sublease, so called in that instrument itself, being on a part of the premises, and giving an easement on a part of the remainder for the full term, is a sublease or an assignment, and it is claimed that, as an assignment, it gives the right of renewal; but we deem this question immaterial, for, whatever the language or construction, the holder of the sublease can have no greater rights against the lessor as owner of the premises then were given by the original lease, which did not provide for a renewal on a part of the land. It may be conceded that, if plaintiff had an assignment of the whole of the original lease, he could have demanded a renewal on the whole premises, and that, if Williams had been a party to the sublease, its provisions for a renewal on a part of the premises could be enforced against him and his successors in interest; but, under the facts stated, we are unable to see how they can be required to fulfill this covenant in the sublease, when it is different from any in the original lease.

As apparently the allegations and admissions in the pleadings are conclusive, and in view of the near approach of the expiration of the time claimed for a renewal, the delays of litigation, and the conditions, we have considered the question presented as probably controlling on the merits, which is in consonance with the briefs and argument. Nevertheless, it may be said that, under the circumstances, the temporary injunction to run until the further order of the court was not improperly granted, and that its dissolution was not erroneously refused, if the judge entertained serious doubts regarding the final right of the plaintiff to have a restraining order. Courts have often held that an injunction ought not to be granted unless the applicant shows clearly that he is entitled to one, but other tribunals take the view that it depends largely upon a sound discretion and the circumstances, such as the relative inconvenience and injury that may result to the parties, and that where there is grave doubt in relation to the law or the facts a temporary injunction may be granted

to prevent great hardship or irreparable damage, until there is a hearing and determination. (*Harriman* v. *Northern Securities Co.*, 132 Fed. C. C. 464, and cases there cited.)

Now, as it no longer appears, after careful consideration, that the plaintiff is entitled to it, the district court is directed to set aside and dissolve the preliminary injunction.

### ON PETITION FOR REHEARING.

*Per Curiam:*

Petition for rehearing denied.