# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WILLIAM HADDOX, a married man, and ERICA LEWIS, a married woman, | No. 58173-6-II |
| Appellants, | |
| v. | |
| PEAT, LLC, a Washington limited liability company, and R & D RESEARCH & DEVELOPMENT, LLC., a Washington limited liability company, | UNPUBLISHED OPINION |
| Respondents, | |
| BRENT EATON, a married man, | |
| Third Party Defendant. | |

VELJACIC, A.C.J. — William Haddox and Erica Lewis (collectively Appellants) appeal the trial court's decision to grant partial summary judgment in favor of R & D Research and Development, LLC (R & D). Appellants also appeal the trial court's decision to deny their cross-motion for partial summary judgment, their motion to continue the summary judgment hearing, and their motion for reconsideration. Appellants also move us to allow additional evidence on review pursuant to RAP 9.11.

We hold that the trial court properly granted partial summary judgment in R & D's favor and properly denied Appellants' cross-motion and motion for reconsideration. We further hold that the trial court did not abuse its discretion in denying Appellants' motion for a continuance pursuant to CR 56(f). We decline to address Appellants' request to allow additional evidence on

review because a panel of this court has already decided that issue. Finally, we remand to the trial court to address R & D's request for attorney fees and costs at the time the matter is adjudicated.

## FACTS

### I. BACKGROUND

R & D owns commercial property at "2100 N. National Avenue" in Chehalis, Washington.[1] Clerk's Papers (CP) at 10. In 2019, R & D entered into a purchase and sale agreement (PSA) to sell the property to PEAT, LLC, owned by Brent Eaton. The sale had a delayed closing of two years. R & D's general manager of the premises told the tenants to expect new ownership.

A statutory warranty deed was signed and placed in escrow but was never recorded or delivered. As part of the sale, PEAT and R & D entered into a lease in January 2020. The commercial lease agreement listed PEAT as the tenant and R & D as the landlord.

The lease stated that "[PEAT] shall not assign, sublet, mortgage, encumber or otherwise transfer any interest in this Lease . . . or any part of the Premises, without first obtaining Landlord's written consent." CP at 37. An addendum to the PSA provided that PEAT is entitled to "conduct all standard business practices in its name (PEAT, LLC). Such practices include but are not limited to branding, marketing, leasing, property improvements, tenant improvements, third party service contracts." CP at 200. The addendum further gave PEAT the right to "sublease all or part of the property with landlord approval." CP at 51.

The sale ultimately failed, and through a mutual agreement, PEAT and R & D terminated the sale in September 2022 and with it the commercial lease agreement.

---

[1] Otherwise known as Midway Plaza or Yard Birds Mall.

However, prior to the termination of the sale, Eaton purportedly renewed[2] the leases of tenants who were currently renting the commercial space. One of those tenants was Alltech Electronics, a business owned by Haddox that had been operating from the premises since 2014. Alltech entered into a lease with PEAT for a 5-year lease term on August 28, 2021, which was set to expire in August 2026. The Squirrel Hut Boutique, a clothing store owned by Lewis that had been operating on the premises since 2015 also entered into a lease with PEAT on August 1, 2021, which was set to expire in August 2026.

Also, prior to the termination of the PSA, Eaton appears to have presented himself and PEAT as the property owners in his correspondence with the tenants. For example, in a notice sent to Lewis about a change in her lease rate, Eaton signed his name as the "Owner/Operator" of Yard Birds Mall/Midway Plaza. CP at 125. In a notice to the tenants titled "The Past, Present and Future," Eaton referred to himself as the owner of Midway Plaza. CP at 131.

In 2022, the City of Chehalis began to post notices requiring certain building repairs. According to the Appellants, Eaton was unreachable during this time. In August 2022, the City shut off power to the building because the required maintenance had not been performed and utility payments had not been made.

In October 2022, one month after the PSA between R & D and PEAT was terminated, R & D posted notices on the leased spaces terminating the tenancy and requiring them to vacate the premises by the end of November. The City also posted an emergency order condemning the building and forbidding entry because the building posed "an imminent hazard to public safety." CP at 160. This prevented the tenants from entering the building to vacate until December 6, 2022.

---

[2] While Appellants characterize these agreements as renewals, "renewal" does not appear anywhere in the subject documents.

The tenants, upon reentry, found rat and cat feces covering the space and water damage to their personal property.

## II. PROCEDURAL HISTORY

The Appellants filed suit against PEAT and R & D, alleging breach of contract, unjust enrichment, conversion, and requesting specific performance. Appellants also filed a lis pendens against the property. In its answer, R & D admitted to owning the property and that PEAT was a tenant. However, R & D denied that PEAT was an owner, asserting that the lease renewals between PEAT and Appellants were subleases that were entered into without R & D's authority or knowledge.

R & D filed a motion for partial summary judgment to dismiss the breach of contract claims against it. In the motion, R & D asserted that Appellants had no claim against it based on subleases entered into with PEAT because the commercial lease and PSA between PEAT and R & D was terminated, thereby canceling the subtenancies as well. R & D also asserted that the lis pendens was wrongful because Appellants have no action affecting title to real property as required for filing a lis pendens.

Appellants filed a response and a cross-motion for partial summary judgment, arguing that their leases were enforceable against R & D and, therefore, they were entitled to specific performance. In their briefing, Appellants mentioned that a continuance under CR 56(f)(3) may be necessary to allow more time for discovery, alleging that R & D failed to "fully answer discovery requests and, at nearly the same time, filed its Motion for Summary Judgment at a very early stage in [the] proceeding." CP at 72. And because the partial summary judgment was filed before PEAT's answers were due, Appellants did not have time to "conduct motion practice

4

concerning R[ ]&[ ]D's inadequate discovery response." CP at 72. The Appellants again mentioned a possible continuance during the motion hearing.

The trial court granted partial summary judgment in R & D's favor.[3] In its amended order, the trial court concluded:

> 2. That Plaintiffs' alleged leases with PEAT, LLC in August 2021 were subleases to the January 2020 Lease Agreement between owner R[ ]&[ ]D and tenant PEAT, LLC, and that these subleases were terminated by the September 2022 termination, cancellation, and release of the head lease by R[ ]&[ ]D/PEAT, LLC.
> 3. That Plaintiffs filed a Lis Pendens against the property owned by Defendant R[ ]&[ ]D at 2100 N. National Ave on December 20, 2022 when they did not have an "action affecting title to real property" as required by RCW 4.28.320.
> 4. That there are no genuine issues of material fact, and Defendant R[ ]&[ ]D is entitled to judgment as a matter of law on relief sought by this motion for partial summary judgment.

CP at 348-49. The court ordered the lis pendens to be removed. The court also concluded that there was no just reason for delay and that its order was a final appealable order.

The trial court did not mention a continuance. And the parties did not ask the court about a ruling on a motion for a continuance.

The Appellants filed a motion for reconsideration of the trial court's decision. The court denied the motion.

Appellants appealed.[4]

---

[3] The only claims that were dismissed as a result of the trial court's order were the breach of contract claims against R & D. There remains other pending claims against both R & D and PEAT.

[4] Because the trial court concluded there was no just reason for delay, this matter is appealable under RAP 2.2(d).

III.    MOTION AT COURT OF APPEALS

Appellants moved this court to take additional evidence consisting of a deposition of Eaton, as well as e-mails produced by Eaton in response to written discovery, pursuant to RAP 9.11.  This motion was denied by a commissioner of this court, who reasoned that the more specific rule, RAP 9.12, controls over the general rule, RAP 9.11.  The commissioner added that even if this court applied RAP 9.11, the Appellants' motion failed because they did not timely conduct discovery before the summary judgment decision, and the superior court denied their CR 56(f) motion when it ruled on the summary judgment motion.  In the ruling, the commissioner also noted:

> [T]his motion is fairly unique in that the issue whether the late deposition should be (or should have been) considered on summary judgment appears to already be before this court (or will be when briefs are due).  Appellants state that they plan to challenge the continuance denial in their appeal.  See generally RAP 2.4(b).  For this additional reason, adding it to the record now would be premature.

Comm'r's Ruling, *Haddox v. PEAT*, No. 58173-6-II, at 2 (Wash. Ct. App. Sept. 11, 2023).

Appellants moved to modify the commissioner's ruling, which was denied by a panel of this court.

ANALYSIS

I.    MOTION TO TAKE ADDITIONAL EVIDENCE

As a preliminary matter, Appellants request that we take additional evidence on review— the Deposition of Eaton and e-mails produced by Eaton in response to written discovery.  Appellants previously filed a motion to take additional evidence pursuant to RAP 9.11 with this court that the commissioner of this court denied.  Appellants then filed a motion to modify the commissioner's ruling that a panel of judges denied.  The Appellants did not move for discretionary review of the order denying the motion to modify.  *See* RAP 13.3(c) (permitting a

party to seek discretionary review at our supreme court of interlocutory decisions of the court of appeals). Having already denied the motion to modify, we decline to address this issue further.

II.    SUMMARY JUDGEMENT ORDER

Appellants argue that the trial court erred in granting partial summary judgment in R & D's favor because there is a question of fact as to whether PEAT had the authority to obligate R & D to long-term leases in light of the addendum to the PSA and the representations made by PEAT and R & D. The Appellants cross-moved for partial summary judgment because they originally believed there was no genuine issue of material fact on this issue.

R & D counters that the facts regarding the lease between R & D and PEAT are undisputed. Based thereon, R & D argues that the record shows the Appellants were subleases of PEAT's original lease with R & D. We agree.

A.    Standard of Review

We review a summary judgment order de novo, considering the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Royal Oaks Country Club v. Dep't of Revenue*, 2 Wn.3d 562, 568, 541 P.3d 336 (2024).

Summary judgment is properly granted if the pleadings, affidavits, depositions or admissions on file show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. CR 56(c). The purpose of the summary judgment procedure is to avoid an unnecessary trial when there is no genuine issue of material fact. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989). The moving party bears the initial burden of establishing that there are no disputed issues of material fact. *Id*. at 225. "After the moving party has submitted adequate affidavits, the burden shifts to the nonmoving party to set forth specific facts sufficiently rebutting the moving party's contentions and disclosing the

existence of a material issue of fact." *Travis v. Tacoma Pub. Sch. Dist.*, 120 Wn. App. 542, 549, 85 P.3d 959 (2004). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

> B.     R & D's Obligation Under the Appellants' Leases

The dispute regarding R & D's obligations under the Appellants' leases is centered on the nature of the relationship between R & D and PEAT. Appellants first argue that PEAT owned the premises for the period wherein they entered into the leases and, therefore, the leases are binding on the subsequent purchaser, R & D. R & D responds that because the statutory warranty deed was not delivered and PEAT failed to meet the terms in the PSA, causing escrow to fail, there was never a conveyance of title. We agree with R & D.[5]

We looks to chapters 59 and 64 of the Revised Code of Washington to determine whether one has a conveyance of title or a lease. RCW 59.18.030(30)[6] defines lease to mean "all agreements which establish or modify the terms, conditions, rules, regulations, or any other provisions concerning the use and occupancy of a dwelling unit." Conversely, RCW 64.90.010(14)[7] defines conveyance as "any transfer of ownership of the unit, including a transfer by deed or by real estate contract."

---

[5] Appellants also argue that the bona fide purchaser doctrine would not protect R & D from being bound by the leases upon repurchase from PEAT because R & D had knowledge of the leases prior to repurchase. Because we conclude that R & D never conveyed title to PEAT in the first place, we do not address this argument.

[6] We acknowledge this statute has been amended recently, but the amendments did not affect this subsection. LAWS OF 2023, ch. 331, § 2; LAWS OF 2023, ch. 277, § 10.

[7] We acknowledge this statute has been amended recently, but the amendment does not affect this subsection. LAWS OF 2024 ch. 321, § 301.

Washington law holds that a sublessee's rights are no greater than those of his sublessor, and the sublessee is charged with notice and bound by the terms and conditions of the original lease. *McDuffie v. Noonan*, 176 Wash. 436, 439-40, 29 P.2d 684 (1934). So, if the sublessor incurs a forfeiture of his lease due to nonperformance of his obligations, the original lessor is entitled to possession as against the sublessee. *Id*; *see also Shannon v. Grindstaff*, 11 Wash. 536, 539-40, 40 P. 123 (1895) (stating that when entering into sublease, a sublessee is charged with notice and bound to the original lease); 49 AM. JUR. 2d, Landlord and Tenant, § 511, at 490-91 (2018).

Here, the leases entered into by PEAT with Alltech and Squirrel Hut were subleases, and the lease agreement between PEAT and R & D controls. *See McDuffie*, 176 Wash. at 439-40. PEAT and R & D contend that PEAT failed to meet its obligations under the PSA and lease with R & D, leading to mutual termination and cancellation of the lease between R & D and PEAT, resulting in R & D being entitled to possession. The evidence supports this contention, and Appellants have failed to present facts sufficient to create a genuine issue of fact. In other words, Alltech's and Squirrel Hut's rights were terminated under the terms of the original lease between R & D and PEAT, and they cannot defeat the right of the owner, R & D, to possession by virtue of the sublease.

PEAT did not own the property at the time of the sublease. Therefore, PEAT could only convey an interest limited by the scope of its own lease—a portion of the property it leased, for a time period during which it had possession of the property and, pursuant to the addendum, a right to lease to others only so long as notice was given to R & D. Since PEAT did not have authority beyond this, any lease is a sublease, not a lease directly with R & D.

Appellants do not dispute that the statutory warranty deed between R & D and PEAT placed in escrow was never delivered or recorded. The addendum Appellants reference was part of the PSA, which they conceded was later canceled by mutual agreement between R & D and PEAT. Therefore, the PSA that the Appellants refer to is not related to the possessory interest of PEAT. Instead, the PSA is related to the potential sale, which fell through. Accordingly, because the statutory warranty deed was not delivered and PEAT failed to meet the terms in the PSA, causing escrow to fail, there was never a conveyance of title to PEAT. Thus, PEAT never owned the property such that R & D became a subsequent purchaser bound by the leases between PEAT and Appellants.

C.    Actual or Apparent Authority

Appellants next argue that whether PEAT was the owner is inconsequential because PEAT had actual and apparent authority to enter into the leases based on express language in the addendum to the PSA. R & D responds that no authority to enter into long-term leases existed, and as a mere lessee itself, PEAT was never authorized to act on R & D's behalf under either actual or apparent authority theories. We agree with R & D that PEAT was not authorized to act on R & D's behalf.

"An agency is created by the actions of two parties. The agent manifests a willingness to act subject to the principal's control, and the principal expresses consent for the agent to so act." *Costco Wholesale Corp. v. World Wide Licensing Corp.*, 78 Wn. App. 637, 645-646, 898 P.2d 347 (1995).

This case does not involve issues of agency authority. Moreover, this matter does not involve apparent authority because the Appellants admitted that they negotiated the purported lease with PEAT and Eaton only. They paid rent to PEAT and Eaton, and understood PEAT and

Eaton to be the property owner at the time of negotiating the leases, never engaging with R & D. There is no language in the lease supporting that these were subleases derived from R & D's ownership. Rather, the purported leases presented as deriving from PEAT only, as purported owner. Questions of authority are misplaced. It is illustrative to note that authority would be a material question if PEAT represented itself as an agent or presented the leases as subleases on behalf of R & D, but Appellants present no facts to create a genuine issue of fact upon which a reasonable trier of fact could conclude in their favor here. Accordingly, Appellants' argument fails.

### D.      Notice

Appellants next argue that even if the subleases can be terminated, R & D failed to provide adequate notice under the lease. Appellants cite *Gray v. Gregory*, 36 Wn.2d 416, 418-19, 218 P.2d 307 (1950), for the proposition that a termination notice that fails to follow a lease's terms is ineffective to maintain an unlawful detainer action. However, because we previously concluded that Appellants were signators to leases with PEAT, not R & D, R & D has no obligation to Appellants under the leases.

## III.     CR 56(f) CONTINUANCE

Appellants argue that the trial court erred by not granting their motion for a CR 56(f) continuance to allow additional discovery, which they requested as an alternative to their motion for partial summary judgment. Specifically, Appellants rely on *Keck v. Collins*, 181 Wn. App. 67, 88, 325 P.3d 306 (2014), *aff'd but criticized on other grounds by* 184 Wn.2d 358 (2015), for the proposition that the "'trial court must make justice its primary consideration in ruling on a motion for a continuance.'" Reply Br. at 8. Appellants contend that at the time R & D filed its motion for partial summary judgment, the deadline for PEAT to file an answer to the original complaint

had not passed. Therefore, Appellants argue that absent prejudice to the moving party, the court should have granted their motion for a continuance. We disagree.

Initially, R & D points out that there was no trial court order on the matter. While there is no order denying Appellants' CR 56(f) motion for a continuance, we nevertheless assume the motion was denied given that the trial court moved forward and ruled on the partial summary judgment motions. Accordingly, we review the assignment of error.

"Whether a motion for continuance should be granted or denied is a matter of discretion with the trial court, reviewable on appeal for manifest abuse of discretion." *Trummel v. Mitchell*, 156 Wn.2d 653, 670, 131 P.3d 305 (2006). "Abuse of discretion is not shown unless the discretion has been exercised upon a ground, or to an extent, clearly untenable or manifestly unreasonable." *Friedlander v. Friedlander*, 80 Wn.2d 293, 298, 494 P.2d 208 (1972).

Under CR 56(f), a court may order a continuance to allow the nonmoving party in a summary judgment proceeding to obtain discovery needed to respond to the motion "[s]hould it appear from the affidavits of a party opposing the motion that, for reasons stated, the party cannot present by affidavit facts essential to justify the party's opposition." The trial court may deny a motion for continuance where: "(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact." *Turner v. Kohler*, 54 Wn. App. 688, 693, 775 P.2d 474 (1989).

A party seeking a CR 56(f) continuance must submit an affidavit or affidavits setting forth particular facts expected from the additional discovery and good reason why discovery could not have been pursued earlier. *Hewitt v. Hewitt*, 78 Wn. App. 447, 455, 896 P.2d 1312 (1995); *Turner*, 54 Wn. App. at 693.

Appellants' reliance on *Keck* is misplaced. In that case, Division III of this court held that justice required continuing the summary judgment hearing to allow for full consideration of the witness's affidavit. *Keck,* 181 Wn. App. at 88. Further, the continuance in that case was found just because the "appellants were hobbled by counsel who, due to extenuating circumstances, lacked the time and attention needed to ensure [the witness's] first and second affidavits provided enough specificity to show a genuine issue of material fact exist[ed] on negligence." *Id.* at 88-89. That is not the case here.

Here, Appellants did not provide an affidavit setting forth particular facts expected from the additional discovery and/or a good reason for why it could not be pursued earlier. Instead, Appellants merely requested a continuance due to R & D refusing to "fully answer discovery requests and, at nearly the same time, filed its Motion for Summary Judgment at a very early stage in [the] proceeding." CP at 72. And because the summary judgment was filed before PEAT's answers were due, Appellants "did not have time to conduct motion practice concerning R[ ]&[ ]D's inadequate discovery response." CP at 72. Consequently, Appellants noted that "[d]iscovery may also prove necessary from third parties should R[ ]&[ ]D continue to be evasive and withhold relevant evidence." CP at 72. Appellants did not state particular facts that would be or may be expected to be discovered if granted additional time.[8]

Accordingly, the trial court did not abuse its discretion in denying Appellants' motion for a continuance.

---

[8] Additionally, looking at the timeline Appellants had since the time of serving PEAT with discovery requests in January 2023, until the time of the summary judgment motion in April 2023, Appellants could have conducted written discovery and deposed Eaton and other individuals. Nothing in the record shows that they attempted to depose Eaton or that Eaton was unavailable during that time before Appellants filed their own motion for partial summary judgment or requested the continuance in response to R & D's motion for summary judgment.

IV.    MOTION FOR RECONSIDERATION

Appellants also assign error to the trial court's denial of their motion for reconsideration. However, they fail to brief the issue or cite authority. *See Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."). Nevertheless, based on our disposition of this case, the trial court did not err in denying reconsideration of its partial summary judgment order.

V.    ATTORNEY FEES AND COSTS

R & D requests attorney fees and costs on appeal. R & D relies on the lease agreements between PEAT and Appellants, which contain a bilateral attorney fee clause, awarding attorney fees to the prevailing party in a contract dispute. Appellants argue that R & D is not entitled to attorney fees because only parties to a contract are entitled to such based on the contract, and if we affirm, it would necessarily hold there were no contracts between Appellants and R & D.

Because this matter has not been fully resolved, it is still unclear if R & D is the prevailing party. Therefore, we remand to the trial court for a decision on attorney fees and costs at the time this matter is adjudicated.

## CONCLUSION

We affirm the summary judgment dismissal of Appellants' contract-related claims arising from their subleases with PEAT and remand to the trial court to address R & D's request for attorney fees and costs at the time the matter is adjudicated.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, A.C.J.

We concur:

Lee, J.

Price, J.